TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
ANDREW W. FERICH (*pro hac vice*)
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Tel: 310.474.9111; Fax: 310.474.8585

TIMOTHY G. BLOOD (SBN 149343)
tblood@bholaw.com
PAULA R. BROWN (SBN 254142)
pbrown@bholaw.com
JENNIFER L. MACPHERSON (SBN 202021)
jmacpherson@bholaw.com
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619.338.1100; Fax: 619.338.1101

LAURENCE D. KING (SBN 206423)
lking@kaplanfox.com
MATTHEW B. GEORGE (SBN 239322)
mgeorge@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel:  415.772.4700; Fax:  415.772.4707

[additional counsel appear on signature page]

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JOHN HARBOUR, TAMI WISNESKY, JOWELI VUNISA, and J. DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA HEALTH & WELLNESS PLAN, HEALTH NET OF CALIFORNIA, INC., HEALTH NET LIFE INSURANCE COMPANY, CENTENE CORPORATION, HEALTH NET COMMUNITY SOLUTIONS, INC., HEALTH NET, LLC and ACCELLION, INC.,<br><br>Defendants. | Case No. 5:21-cv-03322-EJD<br><br>**PLAINTIFFS JOHN HARBOUR, TAMI WISNESKY, JOWELI VUNISA, AND J. DOE'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH HEALTH NET; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:      August 24, 2023<br>TIME:       9:00 A.M.<br>JUDGE:   Hon. Edward J. Davila<br>CTRM:    4, 5th Floor<br><br>[Class Action Settlement Agreement and the Declarations of Cameron Azari, Timothy G. Blood, Matthew B. George, Robert Siciliano, and Tina Wolfson filed concurrently herewith] |

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on August 24, 2023, at 9:00 a.m., in Courtroom 4 of the

4

United States District Court for the Northern District of California, Robert F. Peckham Federal

5

Building & United States Courthouse, 280 South 1st Street, San Jose, California 95113, the

6

Honorable Edward J. Davila presiding, Plaintiffs John Harbour, Tami Wisnesky, Joweli Vunisa, and

7

J. Doe will and hereby do move for an Order granting Preliminary Approval of the Class Action

8

Settlement with the Health Net Defendants in this matter.

9

This motion is based upon this Notice of Motion and Motion, the supporting Memorandum

10

set forth below, the attached exhibits and declarations, the pleadings and records on file in this

11

Action, and other such matters and argument as the Court may consider at the hearing of this motion.

12

13

Respectfully submitted,

14

Dated: June 23, 2023          By:   /s/ Tina Wolfson

15

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*

16

ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*

17

**AHDOOT & WOLFSON, PC**

18

2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521

19

Telephone:  310.474.9111
Facsimile:  310.474.8585

20

21

ANDREW W. FERICH (*pro hac vice*)
*aferich@ahdootwolfson.com*

22

**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650

23

Radnor, PA 19087
Telephone: 310.474.9111

24

Facsimile:  310.474.8585

25

26

27

28

- 1 -

TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
PAULA R. BROWN (SBN 254142)
*pbrown@bholaw.com*
JENNIFER L. MACPHERSON (SBN 202021)
*jmacpherson@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA  92101
Telephone: 619.338.1100
Facsimile: 619.338.1101

LAURENCE D. KING (SBN 206423)
*lking@kaplanfox.com*
MATTHEW B. GEORGE (SBN 239322)
*mgeorge@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415.772.4700
Facsimile:  415.772.4707

JOEL B. STRAUSS (*pro hac vice*)
*jstrauss@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212.687.1980
Facsimile:  212.687.7714

Attorneys for Plaintiffs and the Proposed Class

# TABLE OF CONTENTS

Page

I.    STATEMENT OF THE ISSUES TO BE DECIDED ........................................................1

II.   INTRODUCTION .........................................................................................................1

III.  BACKGROUND ...........................................................................................................3

    A.    The FTA Data Breach and Subsequent Litigation ...........................................3

    B.    Mediation and Settlement Negotiations ..........................................................4

    C.    Information Learned Prior to Mediation and Through Confirmatory Discovery ....6

IV.  TERMS OF THE SETTLEMENT ..................................................................................7

    A.    The Class Definition .......................................................................................7

    B.    The Release ...................................................................................................8

    C.    The Settlement Benefits .................................................................................8

          1.    Credit Monitoring and Insurance Services ..........................................8

          2.    Documented Loss Payment .................................................................8

          3.    Cash Fund Payments ...........................................................................8

          4.    Prospective Relief and Changes in Business Practices Attributable to the Settlement ...........................................................................................9

          5.    The Settlement's Value to Settlement Class Members ..........................9

    D.    Plan of Distribution .......................................................................................9

    E.    Residual ......................................................................................................10

    F.    Notice to Class .............................................................................................10

    G.    Proposed Class Representative Service Payments ...........................................11

    H.    Attorneys' Fees and Expenses ......................................................................11

    I.    The Settlement Administrator .......................................................................12

V.   PRELIMINARY APPROVAL IS APPROPRIATE .......................................................12

    A.    The Rule 23 Requirements for Class Certification Are Met ............................12

          1.    Rule 23(a) Is Satisfied .....................................................................12

                i.    The Class Is Sufficiently Numerous ......................................12

                ii.    There Are Common Questions of Law and Fact ......................12

                iii.   The Class Representatives' Claims Are Typical .......................13

                iv.   Class Representatives and Proposed Class Counsel Adequately Represent Class Members ................................................13

          2.    Rule 23(b)(3) Is Satisfied .................................................................14

                i.    Common Issues of Law and Fact Predominate Over Any Potential Individual Questions ...............................................14

|  | ii. | A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter | 15 |
| B. | | The Proposed Settlement Is Eminently Fair, an Excellent Result for the Class Members, and Should Be Preliminarily Approved | 16 |
| | 1. | The Strength of Plaintiffs' Case and Possible Monetary Remedies | 17 |
| | 2. | The Risk, Expense, Complexity, and Potential Class Recovery | 18 |
| | 3. | The Risk of Maintaining Class Status Through Trial | 19 |
| | 4. | The Amount Offered in Settlement Is Fair | 20 |
| | 5. | The Proposed Method of Distribution Is Effective | 20 |
| | 6. | The Extent of Discovery Completed and the State of the Proceedings | 21 |
| | 7. | The Experience and Views of Counsel | 21 |
| | 8. | The Presence of a Governmental Participant | 22 |
| | 9. | The Reaction of Class Members to the Proposed Settlement | 22 |
| | 10. | The Settlement Is the Product of Arm's-Length Negotiations That Were Free of Collusion | 22 |
| | 11. | The Proposed Notice Plan Is Appropriate | 23 |
| | 12. | Appointment of Settlement Class Counsel | 24 |
| C. | | Settlement Deadlines and Schedule for Final Approval | 25 |
| VI. | CONCLUSION | | 25 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
    No. 3:16-cv-05486, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018)..........................................14

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................................15

*Churchill Village, L.L.C. v. Gen. Elec.*,......................................................................................
    361 F.3d 566, 576 (9th Cir. 2004) .........................................................................................17

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................................................17

*Corcoran et al. v. CVS Health Corporation*,
    No. 4:15-CV-03504 (N.D. Cal. June 24, 2021) ......................................................................17

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...............................................................................................13

*G. F. v. Contra Costa Cnty.*,
    No. 13-cv-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) .............................................22

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)..............................................18

*In re Accellion, Inc. Data Breach Litigation*,
    No. 5:21-cv-01155-EJD (N.D. Cal.)..............................................................................passim

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018)..................................................................................14, 16

*In re Banner Health Data Breach Litigation*,
    No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019)...........................................................22

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................................16, 22, 23

*In re Experian Data Breach Litigation*,
    No. 8:15-cv-01592-AG-DFM (N.D. Cal. May 10, 2019) .......................................................16

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    No. 3:15-MD-2633, 2019 WL 3410382 (D. Or. July 29, 2019)..........................................17, 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ...............................................................................................13

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .............................................................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..........................................................................................................23

*Phillips Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................................................15

*Rahman v. Marriott Int'l, Inc.*,
    No. SACV2000654, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ..........................................19

*Regents of University of California v. Superior Court*,
    220 Cal. App. 4th 549 (2013) ....................................................................................................18

*Sutter Health v. Superior Ct.*,
    227 Cal. App. 4th 1546 (2014) ..................................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...............................................................................................................15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)....................................................................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .........................................................................................................23

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
    No. CV152171FMOFFMX, 2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)..............................23

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ...............................................................................................17

**Statutes**

Cal. Civ. Code § 1798................................................................................................................19

28 U.S.C. § 1715........................................................................................................................22

**Rules**

Fed. R. Civ. P. 23...............................................................................................................passim

**Other Authorities**

4 Newberg on Class Actions § 11:53 (4th ed. 2013).................................................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether the proposed $10 million non-reversionary Settlement warrants: (a) preliminary approval; (b) certification of a Settlement Class; (c) dissemination of Notice to the Settlement Class Members ("Class Members") of the Settlement's terms; (d) appointment of Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC; Laurence D. King, Matthew B. George, and Joel B. Strauss of Kaplan Fox & Kilsheimer LLP; and Timothy G. Blood, Paula R. Brown, and Jennifer L. MacPherson of Blood Hurst & O'Reardon, LLP as Class Counsel; (e) appointment of Plaintiffs John Harbour, Tami Wisnesky, Joweli Vunisa, and J. Doe ("Plaintiffs") as Class Representatives; and (e) setting a Final Approval Hearing and consideration of applications for Service Payments, attorneys' fees, and reimbursement of litigation costs and expenses.

## II.    INTRODUCTION

Settling Plaintiffs request that the Court preliminarily approve a nationwide class settlement ("Settlement," "Settlement Agreement," or "SA," filed concurrently with this Motion) with named Defendants (collectively, "Health Net"), that would resolve all class claims against only Health Net, on behalf of 1,506,868 Class Members relating to Accellion Inc.'s ("Accellion") File Transfer Appliance ("FTA") Data Breach (the "FTA Data Breach").[1]

This Settlement and preliminary approval motion was initially filed on December 3, 2021, and previously set for a hearing on April 14, 2022. *Harbour, et al. v. California Health & Wellness Plan, et al.*, No. 5:21-cv-03322-EJD, ECF Nos. 48, 49. The preliminary approval hearing was vacated when the Court granted a motion to consolidate all Accellion data breach cases pending before this Court on March 14, 2022. ECF No. 91. Following briefing on and appointment of Interim Class Counsel, on May 17, 2023, Interim Class Counsel stipulated to this case being severed from the consolidated *In re Accellion, Inc. Data Breach Litigation*, and the Court entered an Order on June 15, 2023 granting the stipulation. *In re Accellion, Inc. Data Breach Litigation*, No. 5:21-cv-01155-EJD, ECF Nos. 157 (stipulation to sever) and 168 (Order granting stipulation to sever). All

---

[1] All capitalized terms not separately defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

1  Plaintiffs who filed cases against Health Net in this Court are parties to the Settlement and their

2  counsel collectively seek to be appointed lead counsel by this Motion.

3  The Settlement should be approved because it is fair, reasonable, and adequate. The

4  Settlement would establish a non-reversionary cash fund of $10 million to pay for valid claims,

5  notice and administration costs, and any Service Payments, and attorneys' fees and costs awarded

6  by the Court. All Class Members may submit Claims for benefits. Claimants may elect to receive:

7  (1) three years of Credit Monitoring and Insurance Services ("CMIS"); (2) a payment for

8  reimbursement of Documented Losses of up to $10,000; or (3) a cash payment, calculated in

9  accordance with the terms of the Settlement Agreement (with double the amount to California

10 residents because of the statutory claims available to them), estimated at $686 to $220 for California

11 Claimants and $343 to $110 for all other Claimants (at 1% to 3% claims rates respectively). The

12 Settlement also provides robust injunctive relief and data privacy enhancements, with annual

13 compliance certification.

14 The Settlement is the product of arduous, arm's-length negotiations between experienced

15 counsel, after comprehensive investigation and exchange of information, two mediations with the

16 Honorable Judge Jay C. Gandhi (Ret.) of JAMS, substantial confirmatory discovery, and numerous

17 hours of meet and confers and negotiations undertaken in finalizing the Settlement details.

18 The Settlement resolves claims against Health Net and the Released Parties[2] only, and not

19 Accellion. The Settlement delivers tangible and immediate benefits that address all the potential

20 harms of the FTA Data Breach suffered by Class Members without protracted litigation and its

21 attendant risks. The Settlement compares favorably to previous settlements and delivers a fair,

22 adequate, and reasonable resolution for the Class. Fed. R. Civ. P. 23(e)(2). The Court should

23 preliminarily approve the Settlement.

24

25

26 _____

27 [2] "'Released Parties' means Health Net, LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., California Health & Wellness Plan, Centene Corporation, and CalViva Health . . . . For avoidance of doubt, Accellion, Inc. is not a Released Party . . . ." SA § 1.40.

28

1    **III.    BACKGROUND**

2         **A.    The FTA Data Breach and Subsequent Litigation**

3         In late 2020 and early 2021, Accellion began disclosing to its FTA clients that certain threat

4    actors had breached Accellion client data. First Amended Class Action Complaint ("FAC"), *Harbour*,

5    ECF No. 40, ¶ 2. These threat actors were then able to steal sensitive data from many Accellion

6    clients. *Id.* ¶ 41. As part of the FTA Data Breach, hackers accessed Health Net's files containing

7    Plaintiffs' and Class Members' sensitive PII/PHI. *Id.* ¶¶ 1, 47-49.

8         On or about March 24, 2021, Health Net publicly confirmed that the personal information of

9    certain of the Health Net members may have been compromised. *Id.* Health Net warrants and

10   represents that, as a result of the FTA Data Breach, personal information of approximately 1,506,868

11   individuals was potentially compromised by a threat actor. Concurrently filed Declaration of Tina

12   Wolfson ("Wolfson Decl.") ¶¶ 3, 32. The compromised PII/PHI may have included some, or all, of

13   the following: addresses, dates of birth, insurance identification numbers, Social Security numbers,

14   and health information. FAC, *Harbour*, ECF No. 40, ¶ 1.

15        On April 23, 2021, the *Doe* Health Net action was filed. *Doe*, No. 21-cv-2975-EJD, ECF No.

16   1. On May 4, 2021, *Harbour* was filed. *Harbour* ECF No. 1. On May 7, 2021, the *Vunisa* action was

17   removed to this Court. *Vunisa*, No. 21-cv-03425-EJD, ECF No. 1. Plaintiffs aver claims for

18   negligence, negligence per se, breach of implied contract, invasion of privacy, breach of contract,

19   breach of confidence, and violations of the California Consumer Privacy Act ("CCPA"),

20   Confidentiality of Medical Information Action ("CMIA"), Customer Records Act ("CCRA"), Unfair

21   Competition Law ("UCL"), the Constitution, art. 1, § 1, and HIV Disclosure Laws.

22        Following commencement of the actions, counsel for the Parties began a dialogue about case

23   management issues and engaged in multiple meet-and-confer discussions. Wolfson Decl. ¶ 12.

24   Plaintiffs' counsel already had been engaging in efforts to coordinate all of the class action cases filed

25   in this District relating to the FTA Data Breach, including drafting a stipulation to consolidate those

26   cases and set deadlines for submitting leadership applications. *Id.* When efforts to consolidate failed,

27   in an effort to coordinate and organize the FTA Data Breach litigation, Ahdoot & Wolfson, PC

28   ("Ahdoot Wolfson") filed a motion to consolidate ("Motion to Consolidate") the numerous FTA Data

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

Breach-related class actions pending before this Court, and to set deadlines for filing a Consolidated Complaint and leadership applications. ECF No. 37 (filed April 7, 2021).

On November 23, 2021, Plaintiffs filed the operative FAC in the *Harbour* action.[3] *Harbour*, ECF No. 40. On December 3, 2021, Plaintiffs filed a motion for preliminary approval, seeking the Court's approval of a class action settlement that would resolve all claims against the Health Net Defendants relating to the FTA Data Breach that were brought in *Harbour*, *Doe*, and *Vunisa*, but not the claims in those cases brought against Accellion or any other defendants. *Id.* ECF Nos. 48, 49.

On March 14, 2022, the Court granted the Motion to Consolidate. ECF No. 91. The consolidation order vacated the previously reserved April 14, 2022 hearing date for Plaintiffs' motion for preliminary approval of the Health Net Settlement. Following briefing on and appointment of Interim Class Counsel, on May 17, 2023, Interim Class Counsel stipulated to this case being severed from the consolidated *In re Accellion, Inc. Data Breach Litigation*, and the Court entered an Order on June 15, 2023 granting the severance stipulation. *In re Accellion, Inc. Data Breach Litigation*, No. 5:21-cv-01155-EJD, ECF Nos. 157 (stipulation to sever) and 168 (Order granting stipulation to sever).

Plaintiffs now file again this motion seeking preliminary approval of the Settlement, which would resolve all claims alleged in the now-consolidated *Harbour*, *Doe*, and *Vunisa* actions against only Health Net and their Released Parties. All plaintiffs who filed cases against Health Net in federal court relating to the FTA Data Breach are parties to the Settlement, and their attorneys all collectively seek appointment as class counsel through this Motion.

### B.    Mediation and Settlement Negotiations

As discussed *supra*, following successful meet-and-confer efforts, the Parties reached an early agreement to participate in mediation. Wolfson Decl. ¶ 15; concurrently filed Declarations of Timothy G. Blood ("Blood Decl.") ¶ 20, and of Matthew George ("George Decl.") ¶¶ 2-4.

---

[3]   The FAC adds Plaintiffs Vunisa and J. Doe, who were plaintiffs in separately filed class actions pending in this District, entitled *Doe v. Health Net of California.*, No. 5:21-cv-02975-EJD ("*Doe*") and *Vunisa v. Health Net*, No. 5:21-cv-03425-EJD ("*Vunisa*"). This proposed Settlement would also resolve all claims against Health Net alleged in the *Vunisa* and *Doe* actions.

Prior to mediation, the Parties exchanged information to prepare for and facilitate a productive mediation. Blood Decl. ¶¶ 21-22; George Decl. ¶ 3; Wolfson Decl. ¶ 16. The Parties also exchanged detailed confidential mediation briefs laying out their respective positions on the merits and on settlement. *Id*. Plaintiffs received and analyzed data from Health Net relating to the impact of the FTA Data Breach, including specific information concerning the categories of individuals who received breach notification letters from Health Net, the nature of the PII/PHI at issue, and the number of potential Class Members impacted. *Id*.

On July 19, 2021, the Parties participated in mediation before Judge Gandhi. Blood Decl. ¶ 23; George Decl. ¶ 4; Wolfson Decl. ¶ 17. The Parties were not able to reach an agreement to settle this matter at this mediation. *Id*. In the weeks following the July 19, 2021 mediation, counsel for the Parties continued their dialogue regarding settlement and ultimately agreed to return to mediation. Blood Decl. ¶ 24; George Decl. ¶ 4; Wolfson Decl. ¶ 18.

The second mediation took place on September 27, 2021. Blood Decl. ¶ 25; George Decl. ¶ 5; Wolfson Decl. ¶ 19. After many hours of unsuccessful negotiations, Judge Gandhi proposed a $10 million non-reversionary common fund to settle the matter, which the Parties mutually accepted. Wolfson Decl. ¶ 19. Following the mediation, the Parties continued to negotiate the other myriad terms of the Settlement. Blood Decl. ¶ 26; George Decl. ¶ 6; Wolfson Decl. ¶ 20.

Plaintiffs' counsel solicited competing bids and negotiated with three separate third-party administrators for settlement notice and administration. Wolfson Decl. ¶ 21. Counsel ultimately negotiated an agreement with Epiq Class Action and Claims Solutions, Inc. ("Epiq"), which estimates that the total administration and notice charges in this matter will be approximately $480,000. *Id*. ¶ 21. This estimate is reasonable in the context of this proposed Settlement, and includes all costs associated with providing direct notice and administration of the Settlement. *Id*. Plaintiffs' counsel also solicited competing bids from alternative providers of CMIS. *Id*. ¶ 22, Ex. 1; *see also* SA § 4.2.1.

During the Settlement negotiations, the Parties deferred any discussion concerning the maximum Service Payments to be sought by the proposed Class Representatives until after reaching an agreement on all material terms of the Settlement. Blood Decl. ¶ 26; George Decl. ¶ 6; Wolfson Decl. ¶ 42. There has been no negotiation or agreement regarding the amount of attorneys' fees and

1  expenses. Blood Decl. ¶ 26; George Decl. ¶ 6; Wolfson Decl. ¶ 44. All negotiations were conducted

2  at arm's length, in good faith, free of any collusion, and under the supervision of Judge Gandhi. Blood

3  Decl. ¶ 26; George Decl. ¶ 5; Wolfson Decl. ¶ 44. After comprehensive negotiations and diligent

4  efforts, including two mediation sessions and months of continued negotiations thereafter, the Parties

5  finalized the terms of the Settlement, and now seek preliminary approval of the Settlement.

6       **C.      Information Learned Prior to Mediation and Through Confirmatory
               Discovery**

7

8       The Parties engaged in detailed confirmatory discovery. Through this discovery, Plaintiffs

9  were able to obtain the details surrounding the breach and were informed by Health Net of the

10  following facts, among others, which confirm the fairness, reasonableness, and adequacy of the

11  proposed Settlement.

12       Health Net contracted with Accellion to license the FTA. Wolfson Decl. ¶ 30. In 2015, Health

13  Net required Accellion to enter into a separate Business Associate Agreement ("BAA") under which

14  Accellion was required to use strict safeguards to prevent unauthorized access to sensitive Health Net

15  data, including PII/PHI. *Id.* According to Health Net, they had no reason to believe the FTA product

16  was not secure or ill-suited for the purpose of providing securing file transfers, or that it was

17  susceptible to a breach. *Id.* ¶ 30. Health Net confirmed that Accellion was still fully supporting the

18  FTA as of January 20, 2021. *Id.*

19       On January 20, 2021, Accellion reported to the Health Net's parent company (and Defendant

20  in this action), Centene Corporation, that threat actors exploited two zero-day vulnerabilities in the

21  FTA platform, which potentially allowed access (without authorization) to data stored on the FTA

22  systems of certain Accellion clients. *Id.* ¶ 31. On January 22, 2021, Centene received a critical

23  security alert from Accellion advising it to shut down the FTA system, after which Centene

24  permanently discontinued use of FTA. *Id.*

25       On March 24, 2021, Centene and the other Health Net entities publicly announced the data

26  breach and began sending breach notification letters to impacted persons. *Id.* ¶ 32. In total, Health

27  Net confirmed that they identified and sent notices to 1,506,868 individuals whose PII/PHI was on

28  the FTA at the time of the FTA Data Breach. *Id.* Health Net has confirmed that the data on the FTA

1    varies by individual but included Social Security numbers for 231,265 of these persons. Wolfson

2    Decl. ¶ 32. Health Net has also confirmed that within California, they sent breach notices to

3    1,369,180 individuals. *Id.*

4           Health Net informs that Centene secured the services of IDX to provide credit monitoring

5    services, including credit monitoring, fraud consultation, and identity theft restoration, to affected

6    individuals at no cost for one year, and that it provided this offering out of abundance of caution. *Id.*

7    ¶ 33. Centene confirmed that it has never received a ransom demand relating to the FTA breach, and

8    that it has engaged multiple third-party vendors to monitor the dark web and deep dark web for any

9    sign of its members' data, including on the site where the data of other Accellion clients was posted;

10   however, these vendors have found no evidence that any Health Net's member data has been exposed

11   as a result of the FTA breach. *Id.*

12          In response to the FTA Data Breach and in connection with the proposed Settlement, Health

13   Net has engaged in the following steps, among others, to strengthen the security of their systems,

14   many of which measures will continue for a period of five years following final approval of the

15   Settlement: termination of the use of Accellion's FTA platform and migrating to another cloud-based

16   platform for secure file sharing, which was completed on February 4, 2021; enhancing existing

17   contracting and third-party risk management processes; conducting annual reviews of third-party data

18   transfer vendors' products with respect to data security and privacy; undertaking measures to secure,

19   or securely destroy if and when it is no longer needed for legitimate business purposes, all information

20   that was subject to the FTA Data Breach; continued dark web monitoring; and annual certification of

21   compliance with the foregoing measures. *Id.* ¶ 34; *see also* SA § 4.1.

22   **IV.    TERMS OF THE SETTLEMENT**

23          **A.    The Class Definition**

24          The proposed Settlement Class is defined as follows:

25          [A]ll residents of the United States who were notified by the Health Net Defendants
            that their PHI and PII may have been compromised as a result of the FTA Data
26          Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the
            Action and members of their families; (2) the Health Net Defendants and Accellion,
27          their subsidiaries, parent companies, successors, predecessors, and any entity in
            which the Health Net Defendants or Accellion or their parents, have a controlling
28

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

interest, and their current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

SA § 1.46. This Settlement Class is identical to that averred in the FAC. *Harbour*, ECF No. 40, ¶ 80.

## B.     The Release

In exchange for the benefits provided under the Settlement Agreement, Class Members will release any claims against Health Net and their Released Parties only, related to or arising from the FTA Data Breach. SA § 3.5.1. The claims sought to be released by the Settlement are coextensive with the claims in the operative FAC.

## C.     The Settlement Benefits

The Settlement provides for a $10 million non-reversionary Settlement Fund (SA § 3.6.1) that will be used to provide Participating Class Members with one of the following Benefits:

### 1.     Credit Monitoring and Insurance Services

Each Class Member who submits a claim may elect to receive three years of CMIS. SA § 4.2.1; Wolfson Decl. ¶¶ 4, 22 & Ex. 1. If a Class Member chooses CMIS and already maintains a subscription for a similar product, she will have the option to postpone the commencement of the CMIS by 12 months for no additional charge. SA § 4.2.1. The retail value of the CMIS is $15 per month ($540 for the three-year term) per subscriber. Declaration of Robert Siciliano ¶¶ 5-6.

### 2.     Documented Loss Payment

In the alternative to the CMIS, Class Members may seek reimbursement of up to $10,000 of Documented Losses ("Document Loss Payment"). To receive a Documented Loss Payment, a Class Member must submit a valid Claim Form with attestation regarding the amount of the loss supported by reasonable documentary proof. SA § 4.2.3.

### 3.     Cash Fund Payments

In the alternative to CMIS or a Documented Loss Payment, Participating Class Members may submit a claim to receive a cash Settlement Payment ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with the terms of the Settlement Agreement. *Id.* §§ 4.2.2, 4.7; *see also, infra*, Sec. IV.D. In view of the heightened protections afforded to

- 8 -

California Class Members under the California statutory claims asserted in this lawsuit (i.e., the CCPA), California Class Members who submit valid claims for Cash Fund Payments will receive Settlement Payments that are twice the amount of Settlement Payments made to non-California Class Members. SA § 4.7.2.

It is difficult to estimate the amount of Cash Fund Payments as it will depend on a number of factors. Assuming, however, that the claims rate is between 1% and 3% (concurrently filed Declaration of Cameron R. Azari of Epiq ("Azari Decl.") ¶ 34; *see also, infra*, Sec. V.B.5), Class Counsel estimate that California Claimants will receive approximately $686 at 1%, $337 at 2%, and $220 at 3%, and non-California Claimants will receive approximately $343 at 1%, $168 at 2%, and $110 at 3%. Wolfson Decl. ¶ 25.

### 4. Prospective Relief and Changes in Business Practices Attributable to the Settlement

As a result of this litigation, the Settlement also provides significant remedial measures regarding Health Net's data security practices that will be implemented for a period of five years, which will benefit the Class Members whether or not they submit a claim. *See* SA §§ 4.1.1-4.1.4.

Moreover, for five years after final approval of the Settlement, Health Net will continue to monitor the dark web for indications of fraudulent activity with respect to the potentially compromised data and notify Class Counsel of any detected indications of fraudulent activity with respect to Class Members' data. *Id.* § 4.1.5. Health Net has also agreed to certify compliance annually with all injunctive and remedial relief measures provided for under the Settlement. *Id.* § 4.1.6.

### 5. The Settlement's Value to Settlement Class Members

The cash fund value of the Settlement is $10,000,000. *Id.* §§ 1.50, 3.6. This does not include the value of the Settlement's prospective relief or the retail value of the CMIS.

### D. Plan of Distribution

Subject to the Court's approval, the Settlement Administrator ("Administrator") will apply the Net Settlement Fund to make all distributions necessary for the CMIS claimed, Documented Loss Payments, and Cash Fund Payments. The Administrator will first apply the Net Settlement Fund to pay for claimed CMIS and then to pay for any valid claims for Documented Loss. SA § 4.7.1.

The amount of the Settlement Fund remaining after all payments for CMIS and Documented Loss Payments are applied (the "Post DC Net Settlement Fund"), will be used to pay valid claims for Cash Fund Payments. *Id*. § 4.7.2. The amount of each Cash Fund Payment shall be calculated by dividing the Post DC Net Settlement Fund by double the number of valid claims submitted by California residents added to the number of valid claims submitted by non-California residents to determine a "Initial Cash Amount." *Id*. The Cash Fund Payment amount to non-California residents with Approved Claims will be equal to the Initial Cash Amount, and the Cash Fund Payment to California residents with Approved Claims will equal twice the Initial Cash Amount. *Id*.

Class Members will have the option to receive any Settlement Payment available to them pursuant to the terms of the Settlement Agreement via digital PayPal, Venmo, and/or digital payment Card. *Id*. § 4.3; Azari Decl. ¶ 30. In the event Class Members do not exercise an electronic payment option, they will receive their Settlement Payment via a physical check, which they will have 60 days following distribution to deposit or cash. SA §§ 4.3, 4.8.

**E.      Residual**

The Settlement Fund is non-reversionary. To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement Payments, a subsequent Settlement Payment will be evenly made to all Claimants with Approved Claims who cashed or deposited the initial payment they received, assuming such payment is over $3.00. *Id*. § 4.9. In the event such a payment is less than $3.00 for each Approved Claim for cash, the remaining funds will be used to extend the three-year term of the CMIS for as long as possible for all Claimants who selected CMIS. *Id*. Any amount remaining thereafter will be paid to the proposed Non-Profit Residual Recipient. *Id*. §§ 1.26, 4.9, 4.11; Blood Decl. ¶ 42; George Decl. ¶ 6; Wolfson Decl. ¶ 26.

**F.      Notice to Class**

Pursuant to Rule 23(e), the Administrator will provide Class Members with the Summary Notice via email for any Class Member for whom an email address is available, and via U.S. mail in postcard form for all other Class Members for whom a physical mailing address is available. SA §§ 6.3.1-6.3.2; Azari Decl. ¶¶ 21-23. Undeliverable email notices will result in supplemental email attempts and then a postcard Summary Notice being sent. SA § 6.3.3; Azari Decl. ¶¶ 22-23. For

- 10 -

Summary Notices returned as undeliverable via U.S. mail, the Administrator will re-mail the notice to any forwarding address identified on the return mail. SA § 6.3.4; Azari Decl. ¶ 23.

For recipients of notice via email who have not submitted Claim Forms, the Administrator will periodically transmit reminder emails of the opportunity to submit a Claim Form prior to the Claims Deadline. SA § 6.6; Azari Decl. ¶ 24. The Administrator will also (i) design and conduct an internet digital advertising publication notice program, which will continue through the Claims Deadline, SA § 6.4; Azari Decl. ¶ 25, and (ii) create and maintain a Settlement Website that contains all relevant information and documents regarding the Settlement through which Class Members can submit electronic Claims Forms and Requests for Exclusion. SA § 6.7; Azari Decl. ¶ 26. The Settlement Website will also contain a toll-free telephone number and mailing address through which Class Members can contact the Administrator. SA § 6.7; Azari Decl. ¶¶ 26-27. The language of all Notice Forms is easily understandable and accounts for the education level or language needs of the proposed Class Members. Azari Decl. ¶¶ 28-29, 32-34.

### G.    Proposed Class Representative Service Payments

Each Plaintiff has been a dedicated and active participant on behalf of the Class, putting their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts. Blood Decl. ¶¶ 44-45, 62; George Decl. ¶ 7; Wolfson Decl. ¶ 41. In view of these efforts, counsel will separately petition the Court for approval of Service Payments in the amount of up to $1,500 for each of the four Plaintiffs. SA § 10.1. The Settlement is not conditioned upon the Court's award of any Service Payments. SA § 11.3.

### H.    Attorneys' Fees and Expenses

Plaintiffs' counsel will separately file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. SA §§ 11.1-11.3. There is no "free sailing" clause in the Settlement (*id.*) and any amount sought for payment of attorneys' fees will be reasonable, and consistent with the Ninth Circuit's 25% "benchmark" percentage for such awards. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). As of June 23, 2023, proposed Class Counsel have expended approximately $1,085,807 in lodestar and incurred $34,400.96 in expenses, and extensive work will continue through final approval. Wolfson Decl. ¶ 43; Blood Decl. ¶ 46;

- 11 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA, AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

1  George Decl. ¶ 8. In no event will proposed Class Counsel seek more than 25% of the Settlement

2  Fund in attorneys' fees. Proposed Class Counsel also intend to seek reimbursement of all expenses

3  incurred to date. Any approved Fee Award and Costs will be paid out of the Settlement Fund. SA §

4  11.1. The Settlement is not conditioned upon an award of any attorneys' fees or expenses. SA § 11.3.

5  ### I.    The Settlement Administrator

6  The Parties propose that Epiq Class Action and Claims Solutions, Inc. ("Epiq") serve as

7  Administrator to provide notice; administer and make determinations regarding claim forms; process

8  settlement payments; make distributions; and provide other services necessary to implement the

9  Settlement. SA § 1.44; *see generally* Azari Decl. The costs of the Administrator will be paid out of

10  the Settlement Fund. SA § 3.8. Epiq was selected following a competitive bidding process conducted

11  by proposed Class Counsel to identify the most efficient and lowest cost administration option.

12  Wolfson Decl. ¶ 21. Proposed Class Counsel—who has litigated hundreds of class actions to

13  settlement —has previously worked with Epiq on different matters. Blood Decl. ¶ 48; George Decl.

14  ¶¶ 9-11; Wolfson Decl. ¶ 21. The estimated $480,000 cost for settlement administration is reasonable.

15  Blood Decl. ¶ 48; Wolfson Decl. ¶ 21.

16  ## V.    PRELIMINARY APPROVAL IS APPROPRIATE

17  ### A.    The Rule 23 Requirements for Class Certification Are Met

18  At the preliminary approval stage, "if a class has not [yet] been certified, the parties must

19  ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to

20  certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements

21  of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*

22  *Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

23  #### 1.    Rule 23(a) Is Satisfied

24  ##### i.    The Class Is Sufficiently Numerous

25  There are approximately 1,506,868 Settlement Class Members. Wolfson Decl. ¶¶ 3, 32. The

26  Rule 23(a)(1) numerosity requirement is readily satisfied.

27  ##### ii.    There Are Common Questions of Law and Fact

28  The commonality requirement is satisfied if "there are questions of law or fact common to

- 12 -

1    the class." Fed. R. Civ. P. 23(a)(2). Here, numerous common issues of law and fact affect the Class

2    uniformly, including: the nature of Health Net's data security practices, whether Health Net knew or

3    should have known that Accellion's FTA was unsecure, whether Health Net owed duties of care to

4    Class Members to safeguard their PII/PHI, and whether the Health Net breached those duties. These

5    inquiries will turn on common evidence. Commonality is satisfied.

6                        **iii.      The Class Representatives' Claims Are Typical**

7            Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the Class.

8    "The test of typicality is whether other members have the same or similar injury, whether the action

9    is based on conduct, which is not unique to the named plaintiffs, and whether other Class Members

10   have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

11   984 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, the claims of the named

12   Plaintiffs are typical of the claims of the Settlement Class. Plaintiffs are all individuals who were

13   notified by Health Net that their PII/PHI was impacted because of the breach; the Class Members are

14   also individuals who were notified that their PII/PHI was impacted by the breach. Plaintiffs' and

15   Class Members' claims arise from the same nucleus of facts relating to the FTA Data Breach, pertain

16   to common defendants, and are based on the same legal theories. Plaintiffs thus satisfy the Rule

17   23(a)(3) typicality requirement.

18                       **iv.      Class Representatives and Proposed Class Counsel Adequately
19                                  Represent Class Members**

20           Rule 23(a)(4) permits certification of a class action only if "the representative parties will

21   fairly and adequately protect the interests of the class," which requires that the named plaintiffs

22   (1) not have conflicts of interest with the proposed Class; and (2) be represented by qualified and

23   competent counsel. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

24   895 F.3d 597, 607 (9th Cir. 2018). Plaintiffs and proposed Class Counsel are adequate. First, the

25   proposed Class Representatives have demonstrated that they are well-suited to represent the

26   Settlement Class, have actively participated in the litigation, and will continue to do so. Blood Decl.

27   ¶¶ 44-45, 62; George Decl. ¶ 7; Wolfson Decl. ¶¶ 40-41. They do not have any conflicts of interest

28   with the absent Class Members, as their claims are coextensive with those of the Class Members. *Id.*

1    Second, proposed Class Counsel are qualified and experienced in class action and complex

2    litigation, with expertise and extensive experience in data breach and data privacy class actions. Blood

3    Decl. ¶¶ 50-61 & Ex. 1; George Decl. ¶¶ 9-11 & Ex. 1; Wolfson Decl. ¶¶ 45-61 & Ex. 2. Proposed

4    Class Counsel have been dedicated to the prosecution of this action and will remain so through final

5    approval. Blood Decl. ¶¶ 2-19, 29-37; George Decl. ¶¶ 2-6; Wolfson Decl. ¶¶ 10-19.

6                    **2.      Rule 23(b)(3) Is Satisfied**

7            Rule 23(b)(3) requires that (1) "questions of law or fact common to the members of the class

8    predominate over any questions affecting only individual members of the class," and (2) "that a class

9    action is superior to other available methods for the fair and efficient adjudication of the controversy."

10   Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied.

11                   **i.      Common Issues of Law and Fact Predominate Over Any
                               Potential Individual Questions**
12

13           The Rule 23(b)(3) predominance element requires that "questions of law or fact common to

14   class members predominate over any questions affecting only individual members." Fed. R. Civ. P.

15   23(b)(3). Here, Plaintiffs' claims depend on whether Health Net had reasonable data security

16   measures in place to protect Plaintiffs' and Class Members' PII/PHI, and whether Health Net could

17   have prevented unauthorized exposure or compromise of Plaintiffs' PII/PHI or mitigated its effects

18   with more adequate third-party risk management practices. These questions can be resolved using the

19   same evidence for all Class Members, including the Health Net's internal documents, testimony of

20   its employees, and expert analysis. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No.

21   3:16-CV-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied

22   because the overarching common question . . . can be resolved using the same evidence for all class

23   members and is exactly the kind of . . . common issue that makes certification appropriate.").

24           Indeed, Plaintiffs allege that the FTA Data Breach affected all Class Members in a uniform

25   fashion, compromising the similar types of PII/PHI for Plaintiffs and Class Members. *In re Anthem,*

26   *Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("Plaintiffs' case for liability depends,

27   first and foremost, on whether Anthem used reasonable data security to protect Plaintiffs' personal

28   information . . . . That question can be resolved using the same evidence for all Class Members . . . .").

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

1   The issues presented are susceptible to common proof because they focus on Health Net's

2   class-wide data security policies and practices, and thus are the type of predominant questions that

3   make a class-wide adjudication worthwhile. *Id.*; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.

4   442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and

5   can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'" (citation

6   omitted)). Predominance is satisfied.

7   **ii.   A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter**

8   Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair

9   and efficient adjudication of the controversy," and sets forth the following factors:

10
11      The matters pertinent to the findings include: (A) the class members' interest in
        individually controlling the prosecution or defense of separate actions; (B) the
        extent and nature of any litigation concerning the controversy already begun by or
12      against class members; (C) the desirability or undesirability of concentrating the
        litigation of the claims in the particular forum; and (D) the likely difficulties in
13      managing a class action.

14   Fed. R. Civ. P. 23(b)(3).

15   Where, as here, a court is deciding the certification question in the proposed class action

16   settlement context, it need not consider manageability issues because "the proposal is that there be

17   no trial," and hence manageability considerations are no hurdle to certification for purposes of

18   settlement. *Amchem*, 521 U.S. at 620. A class action is the only reasonable method to fairly and

19   efficiently adjudicate Class Members' claims against Health Net. *See, e.g.*, *Phillips Petroleum Co. v.*

20   *Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would

21   be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no

22   realistic day in court if a class action were not available."). Resolution of the predominant issues of

23   fact and law through individual actions is impracticable: the individual amounts in dispute are too

24   small, the technical issues involved are too complex, and the required expert testimony and document

25   review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

26   The class device is the superior method of adjudicating claims against Health Net that arise

27   from the FTA Data Breach because it promotes efficiency, and no realistic alternative exists. Courts

28   recognize this in other data breach cases where class-wide settlements have been approved. *See, e.g.*,

1   *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (N.D. Cal. May 10, 2019).

2   **B.     The Proposed Settlement Is Eminently Fair, an Excellent Result for the Class
3         Members, and Should Be Preliminarily Approved**

4         The 2018 revisions to Rule 23 confirm the need for a detailed analysis regarding the fairness

5   of a proposed class settlement. "The claims, issues, or defenses of a certified class—or a class

6   proposed to be certified for purposes of settlement—may be settled . . . only with the court's

7   approval." Fed. R. Civ. P. 23(e). Accordingly, a district court may approve a settlement agreement

8   "after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P.

9   23(e)(2).

10        In making this decision, Rule 23(e)(2) clarifies that district courts must consider whether:

11      (A)    the class representatives and class counsel have adequately represented the class;
        (B)    the proposal was negotiated at arm's length;
12      (C)    the relief provided for the class is adequate, taking into account:
               (i)    the costs, risks, and delay of trial and appeal;
13             (ii)   the effectiveness of any proposed method of distributing relief to the class,
                      including the method of processing class-member claims;
14             (iii)  the terms of any proposed award of attorney's fees, including timing of
15                    payment; and
               (iv)   any agreement required to be identified under Rule 23(e)(3); and
16      (D) the proposal treats class members equitably relative to each other.

17  Fed. R. Civ. P. 23(e)(2). Rule 23(e) now reflects the factors that this Circuit already considered for

18  settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

19  likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

20  (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

21  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;

22  and (8) the reaction of the class members to the proposed settlement." *Anthem,* 327 F.R.D. at 317

23  (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

24        "Prior to formal class certification, there is an even greater potential for a breach of fiduciary

25  duty owed the class during settlement. Accordingly, such agreements must withstand an even higher

26  level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required

27  under Rule 23(e) before securing approval. *In re Bluetooth Headset*, 654 F.3d at 946.

28        At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to

- 16 -

1   determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters.,*

2   *Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Ultimately, "[s]trong judicial policy favors settlements."

3   *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004) (ellipses and quotation

4   marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

5   **1.      The Strength of Plaintiffs' Case and Possible Monetary Remedies**

6       Plaintiffs believe they have a strong case for liability based on the alleged shortcomings in

7   the Health Net's data security measures. FAC, *Harbour*, ECF No. 40, ¶¶ 12-13, 69-75. Plaintiffs also

8   believe that they would be able to recover damages on behalf of the Class.

9       The range of potential outcomes, however, is considerable. The damages available will

10  depend on the scope of class certification, whether various theories of damages would be accepted

11  by the Court (i.e., benefit of the bargain, and loss of value of PII/PHI), and which causes of action

12  survive. Nonetheless, if applied across all potential class members equally, Plaintiffs' most

13  conservative measure (based on black-market rates of at least $5 per individual for Social Security

14  numbers[4]) would yield a figure of approximately $7,534,340, while a more expansive measure (based

15  on black market rates of $70 for health care data[5]) would yield approximately $105,480,760.

16  Assuming the statutory damages available to the 1,369,180 California Class Members under the

17  CMIA ($1,000), maximum nominal damages to those individuals alone could be $1,369,180,000.

18      These amounts are not certain, and the claims are subject to numerous risks (*see infra*, Sec.

19  V.B.2.). Plaintiffs believe that the legal theories behind such larger damages have merit, but also

20  recognize that they are untested. As a practical matter, Plaintiffs' counsel recognize that taking such

21  large numbers to a jury presents substantial strategic risks. Even a number in the mid-hundreds of

22  millions potentially risks offending a jury and leading to a nominal award—or no monetary award at

23  all. *See, e.g., Corcoran et al. v. CVS Health Corp.*, No. 4:15-CV-03504, ECF No. 611 (N.D. Cal. June

24  24, 2021) (unanimous defense verdict where Plaintiffs' counsel urged jury to award 6.3 million CVS

25  Pharmacy customers $121 million in generic drug price overcharge suit).

26

27  ───────────────

    [4]  *See Premera, supra,* ECF No. 156, p. 20 of 24, Motion for Class Certification.

28  [5]  *See id.*

## 2. The Risk, Expense, Complexity, and Potential Class Recovery

This factor overwhelmingly weighs in favor of preliminary approval. As stated above, while Plaintiffs believe their case is a strong one, there is substantial risk. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex, and this case is no exception.

There are numerous substantial hurdles that Plaintiffs would have to overcome before the Court might find a trial appropriate. First, given the early stage of the litigation, the legal sufficiency of Plaintiffs' claims has not been tested by a motion to dismiss, including Article III standing. Establishing a cognizable injury tied to Health Net's conduct (as opposed to, for instance, another data breach or some other cause) can present challenges.

Data breach cases, particularly, face substantial hurdles in surviving even past the pleading stage and are among the most risky and uncertain of all class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Health Net would likely challenge liability based on the argument that they retained Accellion in the first place (a purportedly secure third-party data transferor with a file transfer service) and were never informed by Accellion that the FTA product was not secure. *See, supra*, Sec. III.C. They would thus likely contend that Accellion is solely at fault for the FTA Data Breach. Health Net would also likely argue that there are no damages because the class members' data was never made available on the dark web or other illegal sites.

Were litigation to proceed, there would be numerous expert reports and costly depositions, which would present significant expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely unchartered territory and full of uncertainty.

The California statutory claims also face significant risk. The CMIA and CCPA in particular are relatively new and remain largely untested in motion to dismiss, summary judgment, and class certification proceedings.

For example, California courts have ruled that under the CMIA, a plaintiff may not recover statutory damages due to mere theft of medical information; rather, plaintiffs must allege that an unauthorized person actually viewed the confidential information. *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1550 (2014); *see also Regents of Univ. of California v. Superior Ct.*, 220 Cal.

- 18 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-CV-03322-EJD

App. 4th 549 (2013). Health Net may argue that criminals did not actually view the stolen PII/PHI.

Plaintiffs' California CCPA claim faces significant risk of dismissal on the pleadings or an unfavorable disposition at summary judgment. The CCPA is relatively new (effective only on January 1, 2020) and remains largely untested. Were this litigation to continue, Health Net could also argue that the CCPA is inapplicable because the statute does not apply to medical information or protected health information per Cal. Civ. Code § 1798.145(c)(1)(A), and that Heath Net is exempt from the CCPA because it is a covered entity as defined by HIPAA. *See* Cal. Civ. Code § 1798.145(c)(1)(B).

Health Net could also challenge the CCPA claim on standing grounds for any California Class Members whose sensitive information was not stolen. *See* Cal. Civ. Code § 1798.150(a)(1) (providing for private cause of action only for individuals who had information under § 1798.81.5(d)(1)(A) impacted in combination with their name); *see also Rahman v. Marriott Int'l, Inc.*, No. SACV2000654, 2021 WL 346421, at *3 (C.D. Cal. Jan. 12, 2021) (dismissing CCPA claim for lack of standing where plaintiff's more sensitive information, such as credit card numbers, SSN, or passports, was not stolen). Health Net further would dispute standing and injury under the CCPA based upon its claimed cure of the alleged violations. *See, supra*, Sec. III.A; Wolfson Decl. ¶ 10.

Plainly, the Settlement avoids the risk of non-recovery and is a prudent course in view of these high risks. Given that all Class Members will be eligible to elect CMIS or cash payments, the Settlement provides benefits that address all potential harms of a data breach without the substantial risk of continued litigation, which includes the risk of dismissal or judgment against Plaintiffs.

### 3. The Risk of Maintaining Class Status Through Trial

Plaintiffs' case is still in the pleadings stage, and the Parties have not briefed class certification. Class certification proceedings are far off in the distance in this litigation, and prior to those proceedings there is risk of dismissal. Class certification, if and when it arrives, will present substantial risk, particularly given that different types of information were affected for different Class Members, and in light of the fact that class-wide data breach damage models remain largely untested at litigation. Data breach law is developing, so even if Plaintiffs obtained class certification, there is no guarantee that the class action status would be maintained. Health Net would likely seek a Rule 23(f) appeal of any decision by the Court granting class certification, resulting in additional delay to

Class Members. The significant risk of obtaining and maintaining class certification in this case supports preliminary approval.

### 4.       The Amount Offered in Settlement Is Fair

The $10 million non-reversionary Settlement Fund is an excellent result for the Class. With this fund, all Class Members will be eligible for a Settlement Payment in the form of distribution for CMIS, a Documented Loss Payment, or a Cash Fund Payment. SA §§ 4.2.1-4.2.3. The Settlement Fund will be applied to pay all Administrative Expenses, Notice Expenses, the taxes to the Settlement Fund, any Service Payments, and any payment of a Fee Award and Costs. SA § 3.8. Any funds remaining in the Net Settlement Fund after distribution(s) to Class Members will be distributed in a subsequent Settlement Payment to Class Members. SA § 4.9.

The Settlement presents a robust relief package and valuable outcome for the Class compared to other recent data breach class action settlements on a per capita basis. *See* Appendix A attached hereto, Data Breach Settlement Comparison Chart; Wolfson Decl. ¶ 36. The Settlement is in the upper range of settlements on a per-capita basis. The Settlement amount is even stronger in light of the fact that the Settlement does not release claims against Accellion, another potential source of recovery, as well as the additional risks of litigation based on the unique circumstances of this Data Breach, discussed in Sec. V.B.2, *supra*. Indeed, Interim Class Counsel in *In re Accellion, Inc. Data Breach Litigation* matter agreed to sever this Settlement because they observed that the "proposed settlement falls within the range of possible approval as fair, adequate, and reasonable . . . ." *Id*, ECF No. 158, at 5:10-17.

### 5.       The Proposed Method of Distribution Is Effective

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

To file a claim, Class Members need only complete a straightforward Claim Form and, if

1   necessary, submit it along with any documents supporting claimed losses, either through the

2   Settlement Website or by mail. SA §§ 4.2.1-4.2.3, 5.1.1, and Ex. A (claim form); Azari Decl. ¶¶ 24,

3   26, 28. Epiq will process all Claims. SA §§ 1.44, 5.1. The methods of distributing relief to Class

4   Members include both digital and physical check avenues. *Id.* § 4.3; Azari Decl. ¶ 30.

5       Based upon Class Counsel's previous experience in and knowledge, Class Counsel expect

6   the claims rate in this Settlement to be between 1-3%. Wolfson Decl. ¶¶ 4, 24-25; Azari Decl. ¶ 34;

7   *see* Appendix B attached hereto, Data Breach Settlement Claims Rate Comparison Chart.

8                    **6.       The Extent of Discovery Completed and the Stage of the Proceedings**

9       Plaintiffs have diligently developed the facts and legal claims in this case. Plaintiffs

10  conducted significant confirmatory discovery to establish, *inter alia*, facts relevant to the breach and

11  Health Net's liability and its reaction to and actions after the breach, and class size. Blood Decl.

12  ¶¶ 21-22, 28; George Decl. ¶¶ 2-7; Wolfson Decl. ¶¶ 27-28; *see* Sec. III.C, *supra*. Plaintiffs and their

13  counsel have stayed abreast of all material developments involving the FTA Data Breach, including

14  those impacting Health Net. Blood Decl. ¶¶ 21-22, 28; George Decl. ¶¶ 2-6; Wolfson Decl. ¶ 11.

15      The Parties engaged in informal discovery to confirm the Settlement as fair, reasonable, and

16  adequate. As part of the negotiations and Settlement, the Parties engaged in confirmatory discovery

17  to not only verify the relevant facts, but also the fairness of the Settlement. Blood Decl. ¶¶ 21-22, 28;

18  George Decl. ¶ 11; Wolfson Decl. ¶ 27. Proposed Class Counsel's knowledge of facts of this case

19  and of the practice area more broadly informed Plaintiffs' clear view of the strengths and weaknesses

20  of the case, the decision to twice go to mediation with Health Net, and the decision to recommend

21  that the Court grant preliminary approval to the Settlement. Blood Decl. ¶ 28; George Decl. ¶ 11;

22  Wolfson Decl. ¶ 39.

23                    **7.       The Experience and Views of Counsel**

24      Proposed Class Counsel include attorneys who have substantial experience in complex class

25  action litigation, including in data breach and data privacy cases. Blood Decl. ¶¶ 50-61 & Ex. 1;

26  George Decl. ¶¶ 9-11 & Ex. 1; Wolfson Decl. ¶¶ 45-61 & Ex. 2. Proposed Class Counsel fully endorse

27  the Settlement as fair, reasonable, and adequate to the Class, and do so without reservation. Blood

28  Decl. ¶ 61; George Decl. ¶ 11; Wolfson Decl. ¶ 62.

8.      **The Presence of a Governmental Participant**

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been or will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections. Azari Decl. ¶ 35.

9.      **The Reaction of Class Members to the Proposed Settlement**

The Class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Prior to final approval, the Court will be able to review all objections or other comments received from Class Members, along with a full accounting of all opt-out requests.

10.     **The Settlement Is the Product of Arm's-Length Negotiations That Were Free of Collusion**

The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946-47 (internal quotation marks, ellipses and citation omitted). Plaintiffs achieved the Settlement in contested litigation and through arm's-length negotiations that involved two mediation sessions before a highly respected mediator. Plaintiffs undertook substantial investigation of the underlying facts, causes of action, and potential defenses. Blood Decl. ¶¶ 2-14, 21-22; George Decl. ¶¶ 2-6, 11; Wolfson Decl. ¶¶ 2, 35-38. The Parties engaged in extensive arm's length negotiations, including two mediation sessions before a mutually agreed upon mediator, the Hon. Jay C. Gandhi (Ret.) on July 19, 2021 and September 27, 2021. Blood Decl. ¶¶ 20-28; George Decl. ¶¶ 2-6, 11; Wolfson Decl. ¶¶ 35-38.

Judge Gandhi, a highly respected and experienced mediator, has extensive experience in class action litigation, including multiple data breach cases where a settlement was reached and subsequently approved.[6] His involvement here further confirms the absence of collusion. *G. F. v. Contra Costa Cnty*., No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-

---

[6]      *See, e.g., In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, 2019 WL 3410382, at *1 (D. Or. July 29, 2019); *In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX-SRB (D. Ariz. Dec. 5, 2019), ECF No. 170, at 6 (mediation with Judge Gandhi).

1    collusive.") (internal quotation marks and citation omitted).

2    *In re Bluetooth* identified three "signs" of possible collusion: (1) "'when counsel receive[s]

3    a disproportionate distribution of the settlement'"; (2) "when the parties negotiate a 'clear sailing'

4    arrangement," under which the defendant agrees not to challenge a request for an agreed-upon

5    attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns

6    unawarded fees to the defendant, rather than the class. 654 F.3d at 947 (internal citations omitted).

7    None of the *In re Bluetooth* signs are present here. There is no "clear sailing provision" and

8    Class Counsel will not seek fees that exceed the 25% of the Fund benchmark set by *In re Bluetooth*.

9    *Id.* at 942; SA § 11.3; *see, supra,* Sec. IV.H. There is no reversion of the Settlement Fund (SA § 4.11),

10   but rather the Settlement makes every effort to distribute any Residual to the Class (*see id.* §§ 4.9,

11   4.11). Proposed Class Counsel will apply for fees from this non-reversionary Settlement Fund, so

12   that there was every incentive to secure the largest fund possible. There is no indication or existence

13   of collusion or fraud in the settlement negotiations and the Settlement that is being presented to the

14   Court. Interim Class Counsel in *In re Accellion* reached the same conclusion. *Id*, ECF No. 158, at

15   5:11-12 ("the proposed settlement . . . does not bear any of the 'red flags' described in *Bluetooth*").

16   **11.     The Proposed Notice Plan Is Appropriate**

17   For classes certified under Rule 23(b)(3), "the court must direct to class members the best

18   notice that is practicable under the circumstances, including individual notice to all members who

19   can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The standard for the

20   adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal

21   Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113

22   (2d Cir. 2005). The best notice is that which is "reasonably calculated, under all the circumstances,

23   to apprise interested parties of the pendency of the action and afford them an opportunity to present

24   their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

25   The notice should provide sufficient information to allow Class Members to decide whether

26   they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to

27   its terms. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251-52. "[N]otice is adequate if it

28   may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No.

- 23 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

CV 15-2171, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:53, at p. 167 (4th ed. 2013)). The Long Form Notice (SA, Ex. D) here is clear, precise, informative, and meets all the necessary standards, allowing Class Members to make informed decisions with respect to whether to remain in, opt out of, or object to the Settlement.

The Notice Plan includes direct notice by emailing or mailing the Summary Notice (SA, Ex. F) to all Class Members, and reminder emails to those for whom email addresses are available. SA §§ 6.3-6.8; Azari Decl. ¶¶ 19-29. The Administrator will also conduct an internet digital advertising publication notice program and establish Settlement Website. SA §§ 6.4, 6.7; Azari Decl. ¶¶ 25-26. The proposed Notice Plan represents the best notice practicable. Azari Decl. ¶¶ 31-33. Copies of all the notice documents are attached as exhibits to the Settlement Agreement; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B); *see also* Azari Decl. ¶¶ 31-33. The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans (Azari Decl. ¶ 32), the requirements of Fed. Civ. P. 23(c)(2)(B), the N.D. Cal. Procedural Guidance for Class Action Settlements (Guidance # 3), and the Federal Judicial Center ("FJC") guidelines for adequate notice.

As there is no alternative method of notice that would be practicable here or more likely to notify Class Members, the proposed Notice plan constitutes the best practicable notice to Class Members and complies with the requirements of Due Process.

### 12.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). Here, proposed Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data breach and data privacy cases. Blood Decl. ¶¶ 50-61 & Ex. 1; George Decl. ¶¶ 9-11 & Ex. 1; Wolfson Decl. ¶¶ 45-61 & Ex. 2. As described above and in Class Counsel's supporting

declarations and firm resumes, Proposed Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Ahdoot & Wolfson, PC, Kaplan Fox & Kilsheimer LLP, and Blood Hurst & O'Reardon, LLP as Class Counsel.

### C.    Settlement Deadlines and Schedule for Final Approval

In connection with preliminary approval, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the following schedule, which the parties believe will provide ample opportunity for Class Members to decide whether to request exclusion or object:

| EVENT | DATE |
|---|---|
| Notice Date (U.S. Mail and email) | Within **30 Days** from Preliminary Approval Order |
| Deadline to Submit Claim Forms | **90 Days** from Notice Date |
| Deadline to Submit Motion for Attorneys' Fees, Costs and Service Payments | **35 Days** Before Objection Deadline |
| Deadline to Object and/or Comment on the Settlement | **75 Days** from Notice Date |
| Deadline to Submit Request for Exclusion | **75 Days** from Notice Date |
| Final Approval Hearing | To be Determined |

## VI.   CONCLUSION

Plaintiffs John Harbour, Tami Wisnesky, Joweli Vunisa, and J. Doe respectfully request that this motion be granted and that the Court enter an order: (1) certifying the proposed class for settlement; (2) preliminarily approving the proposed class action Settlement; (3) appointing Plaintiffs as Class Representatives and Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC; Laurence D. King, Matthew B. George, and Joel B. Strauss of Kaplan Fox & Kilsheimer LLP; and Timothy G. Blood, Paula R. Brown, and Jennifer L. MacPherson of Blood Hurst & O'Reardon, LLP as Class Counsel; (4) appointing Epiq as the Settlement Administrator; (5) approving the proposed Class Notice Plan; and (6) approving the proposed class settlement administrative deadlines and procedures, including setting a Final Approval Hearing date.

- 25 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA, AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD

Dated: June 23, 2023

Respectfully submitted,

*/s/ Tina Wolfson*

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:  310.474.8585

ANDREW W. FERICH (*pro hac vice*)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone:  310.474.9111
Facsimile:  310.474.8585

TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
PAULA R. BROWN (SBN 254142)
*pbrown@bholaw.com*
JENNIFER L. MACPHERSON (SBN 202021)
*jmacpherson@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA  92101
Telephone:  619.338.1100
Facsimile:  619.338.1101

LAURENCE D. KING (SBN 206423)
*lking@kaplanfox.com*
MATTHEW B. GEORGE (SBN 239322)
*mgeorge@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415.772.4700
Facsimile:  415.772.4707

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOEL B. STRAUSS (*pro hac vice*)
*jstrauss@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212.687.1980
Facsimile:  212.687.7714

Attorneys for Plaintiff and the Proposed Class

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS HARBOUR, WISNESKY, VUNISA,
AND DOE'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-03322-EJD