1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**NORTHERN DISTRICT OF CALIFORNIA**

8
9
10

| | |
|---|---|
| JOHN HARBOUR, TAMI WISNESKY, J. DOE, and JOWELI VUNISA, individually and on behalf of all others similarly situated, | Case No. 5:21-cv-03322-EJD |
| | Hon. Edward J. Davila |
| Plaintiffs, | **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |
| v. | |
| CALIFORNIA HEALTH & WELLNESS, HEALTH NET OF CALIFORNIA, INC., HEALTH NET LIFE INSURANCE COMPANY, HEALTH NET COMMUNITY SOLUTIONS, INC., HEALTH NET, LLC, CENTENE CORPORATION, and ACCELLION, INC., | |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

The Parties, who intend to fully, finally, and forever resolve, discharge, and settle all of Plaintiffs' Released Claims, by and through their respective counsel, in consideration for and subject to the promises, terms, and conditions contained in this Class Action Settlement Agreement and Release ("Settlement Agreement"), hereby warrant, represent, acknowledge, covenant, stipulate and agree, subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows:

## 1.    DEFINITIONS

As used herein, in addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1.    "Actions" means the class actions captioned *Doe v. Health Net of California, Inc. et al.*, No. 5:21-cv-2975, *Harbour et al. v. California Health & Wellness Plan et al.*, No. 5:21-cv-3322, and *Vunisa v. Health Net, LLC et al.*, No. 5:21-cv-3425 now pending before the Honorable Edward J. Davila in the United States District Court for the Northern District of California.

1.2.    "Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all Notice Expenses, locating Settlement Class Members, determining the eligibility of any person to be a Settlement Class Member, administrating and processing Settlement Class Member claims and Claim Forms, and administering, calculating, and distributing the Settlement Fund or the Credit Monitoring and Insurance Services to the Claimants with Approved Claims.

1.3.    "Agreement," "Settlement Agreement," and "Settlement" mean this Class Action Settlement Agreement and Release (including all recitals, exhibits and attachments hereto).

1.4.    "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Settlement Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Settlement Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.5.    "Claimant" means a Settlement Class Member who submits a Claim Form for a

Settlement Payment.

1.6.   "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Settlement Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Settlement Class Member who so requests.

1.7.   "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date 90 days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.8.   "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date 90 days thereafter.

1.9.   "Class Counsel" means attorneys Tina Wolfson, Robert Ahdoot, and Andrew Ferich of Ahdoot & Wolfson, PC; Laurence D. King, Matthew B. George, and Joel B. Strauss of Kaplan Fox & Kilsheimer LLP; and Timothy G. Blood, Paula R Brown, and Jennifer L MacPherson of Blood Hurst & O'Reardon, LLP.

1.10.   "Class Representatives" and "Plaintiffs" mean, collectively, John Harbour, Tami Wisnesky, J. Doe, and Joweli Vunisa.

1.11.   "Complaints" mean, collectively, the Complaint filed in case No. 5:21-cv-2975 on April 23, 2021, ECF No. 1; and the Complaint filed in case No. 5:21-cv-3322 on May 4, 2021, ECF No. 1; the Complaint in case No. 5:21-cv-3425 filed in the Superior Court of California for the County of Santa Clara on April 6, 2021 and removed to the United States District Court for the Northern District of California on May 7, 2021, ECF No. 1, Exhibit 1; and any amendments thereto.

1.12.   "Court" means the United States District Court for the Northern District of California, the Honorable Edward J. Davila (or any judge sitting in his stead or to whom the Action may be transferred) presiding.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1.13.   "Credit Monitoring and Insurance Services" and "CMIS" mean the services to be provided to Participating Settlement Class Members who are entitled to and so select such services on their Claim Form, and as further described in Section 4.2.1, herein.

1.14.   "Defendants' Counsel" means attorneys Peter B. Morrison, William E. Ridgway, Zachary M. Faigen, and other attorneys at the law firm Skadden, Arps, Slate, Meagher & Flom LLP, on behalf of the Health Net Defendants.

1.15.   "Documented Loss" refers to monetary losses incurred by a Settlement Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not traceable to the FTA Data Breach, and that are not otherwise recoverable through insurance. A claim for a Documented Loss must be supported by Reasonable Documentation that a Settlement Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not traceable to the FTA Data Breach and incurred on or after January 20, 2021.

1.16.   "Effective Date" means one business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Judgment; (ii) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Judgment.

1.17.   "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs awarded by the Court to Class Counsel.

1.18.   "Final Approval Order" means an order that the Court enters after the Final Fairness Hearing, which finally approves the Settlement Agreement without material change to the Parties' agreed-upon proposed final approval order attached hereto as **Exhibit B**.

1.19.   "Final Fairness Hearing" and "Fairness Hearing" mean the hearing to be conducted by the Court to determine the fairness, reasonableness, and adequacy of the Settlement Agreement

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment. The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. §1715(d).

1.20. "FTA Data Breach" refers to the data incident that is the subject of this Action, publicly announced by the Health Net Defendants on March 24, 2021, whereby in or around January 20-22, 2021, an unauthorized user may have accessed certain Health Net Defendants' members' information on the FTA platform, including addresses, dates of birth, insurance identification numbers, and health information.

1.21. "Health Net Defendants" means, collectively, Health Net, LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., California Health & Wellness Plan, and Centene Corporation.

1.22. "Judgment" means the judgment to be entered by the Court. The Judgment must be substantially similar to the form attached hereto as **Exhibit C**.

1.23. "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, settling the Action, and obtaining an order of final judgment.

1.24. "Long Form Notice" means the long form notice of settlement, substantially in the form attached hereto as **Exhibit D**.

1.25. "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Taxes, (iii) any Service Payments approved by the Court, and (iv) any Fee Award and Costs approved by the Court.

1.26. "Non-Profit Residual Recipient" means the Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) nonprofit organization.

1.27. "Notice Date" means the date upon which Settlement Class Notice is first disseminated to the Settlement Class, which shall be within 30 days after entry of the Preliminary Approval Order.

1.28.  "Notice Expenses" means all reasonable costs and expenses expended in the execution of the Notice Plan, including (i) all costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, hosting on the Internet, and publishing the Settlement Class Notice, and informing them of the Settlement, and (ii) any other reasonable and necessary Notice and Notice related expenses.

1.29.  "Notice Plan" means the plan described in this Agreement for disseminating Notice to the Settlement Class Members of the terms of this Agreement and the Fairness Hearing.

1.30.  "Objection Deadline" means the date by which Settlement Class Members must file and postmark all required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Payments, which shall be 75 days following the Notice Date.

1.31.  "Opt-Out Period" means the period in which a Settlement Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire 75 days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.32.  "Participating Settlement Class Member" means a Settlement Class Member who submits an Approved Claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement.

1.33.  "Parties" means Plaintiffs J. Doe, John Harbour, Tami Wisnesky, and Joweli Vunisa, and Defendants Health Net, LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., California Health & Wellness, and Centene Corporation, collectively.

1.34.  "Person(s)" means any individual, corporation, trust, partnership, limited liability company or other legal entity and their respective predecessors, successors or assigns.

1.35.  "PHI" and "Protected Health Information" means individually identifiable health information (as defined in 45 C.F.R. § 160.103) of Plaintiffs and the Settlement Class.

1.36.  "PII" and "Personally Identifying Information" mean the names, addresses, dates of birth, and other personally identifiable information of Plaintiffs and the Settlement Class.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1.37.   "Preliminary Approval Order" means the Court's Order preliminarily approving the Settlement without material modifications to the proposed order or this Agreement that are unacceptable to the Parties. A Proposed Preliminary Approval Order is attached to this Agreement as **Exhibit E**.

1.38.   "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration or affidavit from the Claimant; a Settlement Class Member must provide supporting documentation.

1.39.   "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any law (including federal law, state law, common law, contract, rule, or regulation) or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, monetary or nonmonetary, that have been pled in the Action, or that could have been pled in the action, that arise out of or relate to the causes of action, allegations, practices, or conduct at issue in the Complaint related to the Health Net Defendants with respect to the FTA Data Breach. "Released Claims" does not include claims relating to the enforcement of the settlement. Released Claims do not include rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, against Accellion, Inc. and its predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all past, present, and future officers, directors, employees, stockholders, partners, servants, agents, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any the foregoing entities listed in this sentence. Likewise, "Released Claims" does not include the Health Net Defendants' rights of subrogation against Accellion, Inc. and its predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all past, present, and future officers, directors, employees, stockholders, partners, servants, agents,

7

attorneys, representatives, insurers, reinsurers, subrogees and assigns of any the foregoing entities listed in this sentence or any other responsible party.

1.40.   "Released Parties" means Health Net, LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., California Health & Wellness Plan, Centene Corporation, and CalViva Health and their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party." For avoidance of doubt, Accellion, Inc. is not a Released Party and nothing in this Agreement shall be construed to release it of any liability, including in the case *Centene Corp., et al. v. Accellion, Inc.*, No. 2021-0206 pending in the Delaware Court of Chancery.

1.41.   "Releasing Parties" means Plaintiffs and any Person in the Settlement Class, including those not submitting a claim for a Settlement Benefit.

1.42.   "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class pursuant to the terms of the Agreement.

1.43.   "Service Payment(s)" means the amount of remuneration to be paid to each of the Class Representatives in recognition of their efforts on behalf of the Settlement Class, in an amount to be ordered by the Court, as set forth in Section 10, herein.

1.44.   "Settlement Administrator" means the qualified third-party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Notice. The Parties agree to recommend that the Court appoint Epiq Class Action and Claims Solutions, Inc. as Settlement Administrator to: design, consult on, and implement the Notice and related requirements of this Agreement; implement the Notice, the Settlement Website, the submission and review of Claim Forms, and related requirements of this Agreement, subject to the Court's approval.

1.45.   "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

Insurance Services, the Prospective Relief set forth in Section 4 herein, and any other benefits Settlement Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.46.   "Settlement Class" means all residents of the United States who were notified by the Health Net Defendants that their PHI and PII may have been compromised as a result of the FTA Data Breach. Excluded from the Settlement Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) the Health Net Defendants and Accellion, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Health Net Defendants or Accellion or their parents, have a controlling interest, and their current or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons.

1.47.   "Settlement Class List" means the list generated by the Health Net Defendants containing the last known name, email (if available), and physical mailing address for persons that fall under the definition of the Settlement Class, which the Health Net Defendants will provide to the Settlement Administrator within five days of the entry of the Preliminary Approval Order.

1.48.   "Settlement Class Member" or "Class Member" means a Person who falls within the definition of the Settlement Class and who does not submit a valid Request for Exclusion prior to the expiration of the Opt-Out Period.

1.49.   "Settlement Class Notice" or "Notice" means the form of Court-approved notice of this Agreement that is disseminated to the Settlement Class. The Settlement Class Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website.

1.50.   "Settlement Fund" means the sum of Ten Million Dollars and No Cents ($10,000,000.00), to be paid by the Health Net Defendants as specified in Section 3.6 of this Agreement, including any interest accrued thereon after payment.

1.51.   "Settlement Payment" means any payment to be made to any Participating Settlement Class Member on Approved Claims pursuant to Section 3.11 herein.

1.52.   "Settlement Website" means the Internet website, with the following URL address,

to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms: www.HNFTADataBreachSettlement.com.

1.53.   "Summary Notice" means the summary notices of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit F**.

1.54.   "Taxes" means (i) any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Health Net Defendants or their counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

## 2.   RECITALS

2.1.   On or about March 24, 2021, the Health Net Defendants publicly confirmed that the personal information of certain of the Health Net Defendants' members may have been compromised in the incident involving Accellion's File Transfer Appliance, which was the Health Net Defendants' file transfer software vendor.

2.2.   The Health Net Defendants warrant and represent that as a result of the FTA Data Breach, personal information of approximately 1,506,868 members of the Health Net Defendants was potentially compromised by a threat actor. The personal information may have included some, or all, of the following: addresses, dates of birth, insurance identification numbers, and health information (collectively, "PHI" and "PII").

2.3.     The Health Net Defendants warrant and represent that after learning of the FTA Data Breach, the Health Net Defendants investigated the scope and impact of the incident, reported the incident to and cooperated with federal law enforcement, and permanently discontinued its use of the FTA.

2.4.     The Health Net Defendants warrant and represent that beginning on March 24, 2021, the Health Net Defendants provided notification of the FTA Data Breach to Settlement Class Members. This notification was sent by mail and included—among other details—a description of the incident, impacted information, and customer service resources. The notification also provided an opportunity for Settlement Class Members to sign up for one year of credit monitoring and identity theft protection services from IDX, paid for by the Health Net Defendants.

2.5.     On April 4, 2021, Plaintiff Joweli Vunisa filed a class action complaint against the Health Net, LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., California Health & Wellness, Centene Corporation, and Accellion, asserting claims for violation of the California Confidentiality in Medical Information Act, violation of the California Consumer Privacy Act, violation of the California Unfair Competition Law, invasion of privacy, breach of contract, and breach of implied contract, all seeking remedies (including damages and injunctive relief) for the impact and harm caused by the FTA Data Breach (*Vunisa*, ECF No. 1, Exhibit 1). Defendants removed the case to the United States District Court for the Northern District of California on May 7, 2021 (*Vunisa*, ECF No. 1).

2.6.     On April 23, 2021, Plaintiff J. Doe filed a class action complaint against Health Net of California, Inc., Health Net, LLC, and Accellion, asserting claims for negligence, negligence per se, invasion of privacy, breach of confidence, breach of contract, violation of the California Consumer Privacy Act, violation of the California Unfair Competition Law, violation of the California Confidentiality in Medical Information Act, violation of the California HIV Disclosure Laws, and violation of the California constitutional right to privacy, all seeking remedies (including damages and injunctive relief) for the impact and harm caused by the FTA Data Breach (*Doe,* ECF No. 1).

2.7.     On May 4, 2021, Plaintiff John Harbour and Tami Wisnesky filed a class action

11

complaint against California Health & Wellness Plan, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., Health Net, LLC, and Accellion, asserting claims for negligence, negligence per se, invasion of privacy, breach of confidence, breach of contract, violation of the California Consumer Privacy Act, violation of California Unfair Competition Law, violation of California Confidentiality in Medical Information Act, and violation of the California Constitution all seeking remedies (including damages and injunctive relief) for the impact and harm caused by the FTA Data Breach (*Harbour*, ECF No. 1). On November 23, 2021, Plaintiffs Harbour, Wisnesky, Vunisa, and Doe filed a First Amended Class Action Complaint ("FAC") in the *Harbour* action (*Harbour,* ECF No. 40). Plaintiffs' FAC includes claims for negligence, negligence per se, breach of implied contract, violations of the California Consumer Privacy Act ("CCPA"), violations of the California Confidentiality of Medical Information Action ("CMIA"), violations of the California Customer Records Act ("CCRA"), violations of the California Unfair Competition Law ("UCL"), invasion of privacy (intrusion upon seclusion), violations of the California constitution, art. 1, § 1, declaratory relief pursuant to 28 U.S.C. §§ 2201 *et seq*., breach of contract, breach of confidence, and violations of the California HIV Disclosure Laws.

2.8.    After informal discovery and considerable meet and confer, the Parties agreed to attempt to resolve their dispute through mediation.

2.9.    On July 19, 2021, the Parties engaged in an all-day mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS that did not result in an agreement in principle but after which the Parties continued to attempt to resolve their dispute and continued to exchange documents and information pertinent to assessing the claims and defenses in this matter.

2.10.    On September 27, 2021, the Parties again engaged in an all-day mediation session before Judge Gandhi that, following the parties' acceptance of a mediator's proposal, resulted in an agreement in principle to settle this action as a nationwide class action settlement.

2.11.    Following the second mediation session with Judge Gandhi, and after arm's length negotiations, the Parties were able to finalize all of the terms of this Settlement.

2.12.    Pursuant to the terms set forth below, this Agreement resolves all claims, actions,

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

and proceedings asserted, or that could be asserted, against the Health Net Defendants arising out of or related to the FTA Data Breach, as set forth in the release contained herein, by or on behalf of members of the Settlement Class herein defined but excluding the rights of Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

2.13.   Class Counsel, on behalf of the Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and the Health Net Defendants' potential defenses, including conducting independent investigation and discovery, conferring with defense counsel on discovery related matters, as well as an assessment of the merits of expected arguments in a motion for class certification. Based on an analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of such continued litigation, including the risks and uncertainties associated with class certification and other defenses the Health Net Defendants may assert, a protracted trial and appeal(s), as well as the fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits as expediently as possible. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.

2.14.   Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

2.15.   The Health Net Defendants have similarly concluded that this Settlement Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

2.16.   This Settlement Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Settlement Agreement, are for settlement purposes only and the Health Net Defendants specifically deny any and all wrongdoing. The existence of, terms in, and any action taken under or in connection with this Settlement Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by the Health Net Defendants of (i)

13

the validity of any claim, defense or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

**3.     TERMS OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, and the Health Net Defendants that, subject to Court approval, the Action and Plaintiffs' Released Claims shall be finally and fully compromised, settled, and released, and that the Judgment and Final Approval Order shall be entered subject to the following terms and conditions of this Settlement Agreement.

3.1.    Preliminary Approval. Class Counsel shall submit this Agreement to the Court and shall move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit E**.

3.2.    Cooperation. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement.

3.3.    Certification of the Settlement Class. For purposes of this Settlement only, Plaintiffs and the Health Net Defendants stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. the Health Net Defendants reserve the right to contest class certification for all other purposes. Plaintiffs and the Health Net Defendants further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

3.4.    Final Approval. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Fairness Hearing; within a reasonable time after the Claims Deadline, Objection Deadline, and Opt-Out Period; and at least 90 days after the Health Net Defendants notify the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

3.5.    <u>Releases</u>.

3.5.1.    <u>The Release</u>. Upon the Effective Date, and in consideration of the Settlement Benefits described herein, each Releasing Party shall be deemed to have released, acquitted, and forever discharged the Health Net Defendants and each of the Released Parties from any and all Released Claims.

3.5.2.    <u>Exclusive Remedy</u>. This Agreement shall be the sole and exclusive remedy of the Releasing Parties against any of the Released Parties relating to any and all Released Claims. Upon the entry of the Judgment, each and every Releasing Party shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim(s) against any of the Released Parties in any court, arbitration, tribunal, forum or proceeding.

3.5.3.    <u>Jurisdiction of the Court</u>. The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the above-captioned Action, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations of this Agreement.

3.6.    <u>Settlement Fund</u>.

3.6.1.    <u>Deposit</u>. The Health Net Defendants agree to make a payment of Ten Million Dollars and No Cents ($10,000,000.00) and deposit that payment into the Settlement Fund as follows: (i) the Health Net Defendants shall pay Ten Million Dollars and No Cents ($10,000,000.00) into the Settlement Fund thirty business days after the Court enters the Preliminary Approval Order, which shall in part be available to cover reasonable costs associated with the Notice Plan and any other Administrative Expenses incurred prior to entry of the Final Approval Order and the Judgment. For the avoidance of doubt, and for purposes of this Settlement Agreement only, the Health Net Defendants' liability shall not exceed Ten Million Dollars and No Cents ($10,000,000.00) absent an express written agreement between the Parties to the contrary.

3.6.2.    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited in an appropriate trust established by the Settlement Administrator pursuant to the terms and conditions set forth below; but it shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to

those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled.

        3.6.2.1.    In the event this Settlement Agreement is voided, terminated or cancelled due to lack of approval from the Court or any other reason: (i) the Class Representatives and Class Counsel shall have no obligation to repay any of the Administrative Expenses that have been paid or incurred in accordance with the terms and conditions of this Agreement; (ii) any amounts remaining in the Settlement Fund after payment of Administrative Expenses paid or incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to the Health Net Defendants and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

      3.7.    <u>Non-Reversionary</u>. This Settlement is not a reversionary settlement. As of the Effective Date, all rights of the Health Net Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section 9 in this Agreement. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to the Health Net Defendants.

      3.8.    <u>Use of the Settlement Fund</u>. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Payments; (iv) any Fee Award and Costs; (v) Settlement Payments and/or Settlement Benefits, pursuant to the terms and conditions of this Agreement; and (viii) any other Settlement Benefits.

      3.9.    <u>Financial Account</u>. The Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution (that is not any of the Released Parties) recommended by the Settlement Administrator and approved by Class Counsel and the Health Net Defendants, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq*.

      3.10.    <u>Payment/Withdrawal Authorization</u>. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable

16

Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and the Health Net Defendants with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

3.11.   <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Participating Settlement Class Members pursuant to this Agreement.

3.12.   <u>Treasury Regulations & Fund Investment</u>. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

3.13.   <u>Taxes</u>. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable

17

by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

      3.14.   Limitation of Liability.

           3.14.1.   The Health Net Defendants and their counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

           3.14.2.   Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

           3.14.3.   The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, and the Health Net Defendants and their counsel harmless for (i) any act or omission or determination of the Settlement Administrator, or any of

Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

**4.     SETTLEMENT BENEFITS**

4.1.    <u>Prospective Relief</u>. Without admitting any liability or that it is required by law to do so, and within 30 days after the entry of the Final Approval Order and the Judgment, the Health Net Defendants agree to implement and maintain the following data security measures for a period of five years from entry of the Final Approval Order.

4.1.1.    The Health Net Defendants will confirm that they have fully ended their use of the Accellion File Transfer Appliance and migrated to a new secure file transfer solution;

4.1.2.    The Health Net Defendants will undertake measures to secure, or securely destroy if and when it is no longer needed for legitimate business purposes, all information that was subject to the FTA Data Breach;

4.1.3.    The Health Net Defendants shall conduct annual reviews of third-party data transfer vendors' product(s) with respect to data security and privacy;

4.1.4.    The Health Net Defendants will enhance their existing third-party vendor risk management program, including by taking at least the following measures:

4.1.4.1.    Conduct annual reviews of all file transfer programs or software currently being utilized for individual-to-individual transfers by the Health Net Defendants, including any third-party products, and evaluate whether any software used for such purpose is known by the Health Net Defendants to be outdated, unsupported, or unsecure;

4.1.4.2.    To the extent the Health Net Defendants changes its third-party file transfer vendor in the next five years, implement an RFP or bid solicitation program for third-party file transfer vendors;

4.1.4.3.    Maintain positions within the Health Net Defendants that are specifically responsible for overseeing third-party data transfer vendors and operations; and

4.1.4.4.    Provide annual security awareness training for employees of the Health Net Defendants involved with customer and employee data sharing and data transfer activities, to cover industry best practices for data security and privacy.

4.1.5.    Monitor the dark web for indications of fraudulent activity with respect to the data of the Health Net Defendants customers and/or current or former employees in connection with the FTA Data Breach. The Health Net Defendants shall notify Class Counsel of any detected indications of fraudulent activity with respect to the data of Class Members in connection with the FTA Data Breach.

4.1.6.    The Health Net Defendants agree to annually certify compliance with the relief provide for in this Section 4.1. If the Health Net Defendants fail to comply with any of the measures and relief provided in Section 4.1, the Health Net Defendants will provide Class Counsel with notice of non-compliance within thirty (30) days of any non-compliance.

4.2.    <u>Settlement Payments</u>. In addition, each Participating Settlement Class Member may qualify for one of the following:

4.2.1.    <u>Credit Monitoring and Insurance Services</u>. Three years of the Credit Monitoring and Insurance Services ("CMIS"). The CMIS will include Credit Monitoring, Fraud Consultation, and Identity Theft Restoration services. A Participating Settlement Class Member who chooses CMIS as their respective Settlement Benefit and already maintains a credit monitoring service may elect to defer their enrollment in the CMIS for a period of 12 months for no additional charge. The CMIS will include the following services to be provided to each Participating Settlement Class Member who chooses the CMIS: (i) up to $1 million dollars of identity theft insurance coverage; and (ii) three-bureau credit monitoring providing notice of changes to the Participating Settlement Class Member's credit profile.

4.2.2.    <u>Cash Fund Payment</u>. Participating Class Members may submit a claim to receive a Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 4.7.2 herein.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

4.2.3.   <u>Documented Loss Payment.</u> In the event a Participating Settlement Class Member does not submit a Claim for a Cash Fund Payment or select CMIS, then that Participating Settlement Class Member may submit a claim for a Settlement Payment of up to $10,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. Any Participating Settlement Class Member who submits a Claim for a Documented Loss Payment that is rejected by the Settlement Administrator and that is not cured will be considered as a Claim for a Cash Fund Payment.

4.3.   <u>Settlement Payment Methods.</u> Participating Settlement Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods, i.e., PayPal, Venmo, etc. In the event Participating Settlement Class Members do not exercise this option, they will receive their Settlement Payment via a physical check sent by U.S. Mail.

4.4.   <u>Deadline to File Claims.</u> Claim Forms must be received within 90 days after the Notice Date.

4.5.   <u>The Settlement Administrator.</u> The Settlement Administrator shall have the authority to determine whether a Claim Form is substantially valid, timely, and complete, and to what extent a Claim Form is electing to receive a Documented Loss Payment. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within ten days of making such a determination, the Settlement Administrator shall notify the Claimant of the deficiencies and that Claimant shall have 30 days to cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied and the Class Member shall be so notified.

4.6.    <u>Timing of Settlement Benefits</u>. Within 90 days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Participating Settlement Class Member who is entitled to funds based on the selection made on their given Claim Form. Within 30 days of the Effective Date, the Settlement Administrator shall make best efforts to provide Participating Settlement Class Members who selected CMIS with enrollment instructions for the CMIS.

4.7.    <u>Distribution of Settlement Payments</u>.

4.7.1.   The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Participating Settlement Class Members. If Net Settlement Funds remain after paying for the CMIS, the Settlement Administrator will next use it to pay all Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the Credit Monitoring and Insurance Services are made shall be referred to as the "Post DC Net Settlement Fund".

4.7.2.   The Settlement Administrator shall then utilize the Post DC Net Settlement Fund to make all Cash Fund Payments pursuant to Section 4.2.2 herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post DC Net Settlement Fund by double the number of valid claims submitted by California residents added to the number of valid claims submitted by non-California residents to determine an "Initial Cash Amount" (i.e., Initial Cash Amount = Post DC Net Settlement Fund / (((2) * the total number of Approved Claims submitted by California residents) + (the total number of Approved Claims submitted by non-California residents))). The Cash Fund Payment amount to non-California residents with Approved Claims will be equal to the Initial Cash Amount, and the Cash Fund Payment amount to California residents with Approved Claims will equal twice the amount of the Initial Cash Amount.

4.7.3.   In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Participating Settlement Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments. In

the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Participating Settlement Class Member shall be reduced, on a pro rata basis, such that the aggregate value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

4.8. <u>Deadline to Deposit or Cash Physical Checks</u>. Settlement Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by physical check, shall have 60 days following distribution to deposit or cash their cash benefit check.

4.9. <u>Residual Funds</u>. To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement Payments to the Participating Settlement Class Members, a subsequent Settlement Payment will be evenly made to all Participating Settlement Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check amount in a distribution is less than Three Dollars and No Cents ($3.00). In the event that a subsequent Settlement Payment made to Participating Settlement Class Members would exceed Two Hundred and Fifty Dollars and No Cents ($250.00), then the Parties will seek guidance from the Court on how to disburse the remaining Net Settlement Fund. If the average check amount in a distribution would be less than Three Dollars and No Cents ($3.00), and if possible, the remaining Net Settlement Fund will be used to extend the Credit Monitoring and Insurance Services to Participating Settlement Class Members receiving that benefit for as long as possible. Any amount remaining in the Net Settlement Fund after said extension is accomplished, if any, shall be distributed to the Non-Profit Residual Recipient.

4.10. <u>Returned Checks</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a

valid address and resend the Settlement Payment within 30 days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Settlement Payment.

4.11.   Residue of Settlement Fund. No portion of the Settlement Fund shall revert or be repaid to the Health Net Defendants after the Effective Date. Any residual funds remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement, shall be distributed to the Non-Profit Residual Recipient, as approved by the Court.

**5. SETTLEMENT ADMINISTRATION**

5.1.   Submission of Claims.

5.1.1.   Submission of Electronic and Hard Copy Claims. Settlement Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website, or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

5.1.2.   Review of Claim Forms. The Settlement Administrator will review Claim Forms submitted by Settlement Class Members to determine whether they are eligible for a Settlement Payment.

5.1.3.   Settlement Administrator's Duties.

5.1.3.1.   Cost Effective Claims Processing. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner, and calculate Settlement Payments in accordance with this Agreement.

5.1.3.2.   Dissemination of Notices. The Settlement Administrator shall disseminate the Settlement Class Notice as provided for in this Agreement.

5.1.3.3.     Maintenance of Records. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendants' Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

5.1.3.3.1.     Receive Requests for Exclusion from Settlement Class Members and provide Class Counsel and Defendants' Counsel a copy thereof no later than five days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Settlement Class Members after expiration of the Opt-Out Period, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;

5.1.3.3.2.     Provide weekly reports to Class Counsel and Defendants' Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or Defendants' Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

5.1.3.3.3.     Make available for inspection by Class Counsel and Defendants' Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

5.1.3.3.4.     Cooperate with any audit by Class Counsel or Defendants' Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

5.2.   <u>Requests for Additional Information</u>. In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Participating Settlement Class Member.

5.3.   <u>Timing of Settlement Benefits</u>. The Settlement Administrator shall comply with the terms and conditions of this Agreement herein and shall timely make all Settlement Payments contemplated in this Agreement within 90 days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later.

**6.  SETTLEMENT CLASS NOTICE**

6.1.   Within five days after the date of the Preliminary Approval Order, the Health Net Defendants shall provide the Settlement Class List to the Settlement Administrator.

6.2.   Because the Settlement Class List will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with the Health Net Defendants, Defendants' Counsel, and Class Counsel and will ensure that any information provided to it by Settlement Class Members, Class Counsel, Defendants' Counsel, or the Health Net Defendants, including the Settlement Class List, will be secure and used solely for the purpose of effecting this Settlement.

6.3.   <u>Direct Notice</u>. No later than the Notice Date, and to be substantially completed within 21 days thereafter, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate the Summary Notice to the members of the Settlement Class as follows:

6.3.1.  For any Settlement Class Member for whom an email address is available, the Settlement Administrator shall email the Summary Notice to such Person;

6.3.2.  For any Settlement Class Member for whom an email is not available, and to the extent a physical address is available, the Settlement Administrator will send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid;

6.3.3.  If any notice that has been emailed is returned as undeliverable, the Settlement Administrator shall attempt two other email executions and if not successful, the

Settlement Administrator will send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid, to the extent a current mailing address is available;

6.3.4.   For any Summary Notice that has been mailed via U.S. mail and returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail; and

6.3.5.   Neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail individual notices that have been mailed as provided in this Paragraph.

6.3.6.   In the event the Settlement Administrator transmits a Summary Notice via U.S. Mail, then the Settlement Administrator shall perform any further investigations deemed appropriate by the Settlement Administrator, including using the National Change of Address ("NCOA") database maintained by the United States Postal Service, in an attempt to identify current mailing addresses for individuals or entities whose names are provided by the Health Net Defendants.

6.4.   <u>Notice via Internet Campaign</u>. The Settlement Administrator shall design and conduct an internet advertisement publication notice program targeted to Class Members, which must be approved by the Parties and the Court. This internet advertisement publication notice shall commence no later than the Notice Date and shall continue through the Claims Deadline.

6.5.   <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Settlement Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to which the claimant is not entitled. In the event a Claim Form is submitted without a unique class member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.6.   <u>Email Reminder</u>. For any Settlement Class Member for whom the Settlement Administrator has an email address, and who has not submitted a valid Claim Form, the Settlement Administrator shall transmit periodic email reminders of the opportunity to file a Claim Form prior to the Claims Deadline.

6.7.   <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to

27

the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall also allow for submission of Requests of Exclusion electronically through the Settlement Website.

6.8.    <u>Contents of the Long Form Notice</u>. The Long Form Notice shall, *inter alia*, (i) specify the deadline for Settlement Class Members to opt-out, object to, or otherwise comment upon the Settlement by day, month, and year, and state that any objection to this Agreement, and any papers submitted in support of said objection, will only be considered by the Court at the Fairness Hearing if, on or before the deadline to opt-out of, object to, or otherwise comment upon the Settlement, the Person making the objection files copies of such papers he or she proposes to submit for consideration at the Fairness Hearing with the Clerk of the Court; (ii) contain instructions on how to submit a Claim Form; (iii) note the deadline for Settlement Class Members to submit Claim Forms; and (iv) note the date, time and location of the Fairness Hearing. A copy of the Long Form Notice is attached hereto as **Exhibit D**.

**7. OPT-OUT PROCEDURES**

7.1.    Any Settlement Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event the Settlement Class Members submit a Request for Exclusion to the Settlement Administrator via US Mail, such Request for Exclusion must be in writing and must identify the case name *Harbour v. California Health and Wellness Plan*, Case No. 5:21-cv-03322-EJD (N.D. Cal.); state the name, address and

telephone number of the Settlement Class Members seeking exclusion; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Harbour v. California Health and Wellness Plan, et al.*, U.S.D.C. Case No. 5:21-cv-03322-EJD (N.D. Cal.)." Any Person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. No Person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

**8.   OBJECTION AND COMMENT PROCEDURES**

8.1.    Any Settlement Class Member may comment in support of or in opposition to the Settlement and may do so in writing, in person, or through counsel, at his or her own expense, at the Fairness Hearing. Except as the Court may order otherwise, no objection to the Settlement shall be heard, and no papers, briefs, pleadings, or other documents submitted by any objector shall be received and considered by the Court unless such objector mails to the Court (c/o the Class Action Clerk, U.S. District Court for the Northern District of California) or files in person at any location of the United States District Court for the Northern District of California a written objection with the caption *Harbour v. California Health and Wellness Plan, et al.*, U.S.D.C. Case No. 5:21-cv-03322-EJD (N.D. Cal.), that includes: (i) the Settlement Class Member's full name, current mailing address, and telephone number; (ii) a signed statement that he or she believes himself or herself to be a member of the Settlement Class; (iii) whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class, (iv) the specific grounds for the objection; (v) all documents or writings that the Settlement Class Member desires the Court to consider; and (vi) a statement regarding whether they (or counsel of their choosing) intend to appear at the Fairness Hearing. All written objections must be postmarked no later than the Objection Deadline. Any objector who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding absent a showing of good cause.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

**9.   MODIFICATION OR TERMINATION OF THE AGREEMENT**

9.1.   The Parties shall have the right to terminate this Agreement by filing with the Court and serving on counsel for the other party a notice of termination within 14 days after the end of the Opt-Out Period if more than 2% of Settlement Class Members (approximately 28,000) submit valid Requests for Exclusion.

9.2.   In addition, the terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

9.3.   In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of Sections 3.6.2, 3.7, 9.3, and 9.4 herein) and shall have no legal effect and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of the Action), and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

9.4.   Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

**10.   SERVICE PAYMENTS**

10.1.   Class Representatives may each seek a Service Payment, not to exceed One Thousand Five Hundred Dollars and No Cents ($1,500.00) to be awarded and approved by the

30

Court, and be paid from the Settlement Fund. Any request for such award of Service Payments must be filed at least 35 days prior to the Objection Deadline.

10.2.    The Settlement Administrator shall pay the Service Payments approved by the Court to the Class Representatives from the Settlement Fund. Such Service Payments shall be paid by the Settlement Administrator, in the amount approved by the Court, within five business days after the Effective Date.

10.3.    In the event the Court declines to approve, in whole or in part, the payment of Service Payments in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of a Service Payment shall constitute grounds for cancellation or termination of this Agreement.

**11.    FEE AWARD AND COSTS**

11.1.    Class Counsel may file a motion for an award of the Fee Award and Costs to be paid from the Settlement Fund. The motion must be filed at least 35 days prior to the Objection Deadline. Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs shall be paid by the Settlement Administrator, in the amount approved by the Court, within five business days after the Effective Date.

11.2.    Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves. The Health Net Defendants shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

11.3.    The Settlement is not conditioned upon the Court's approval of the Fee Award and Costs or the Service Payments.

**12.    JUDGMENT**

12.1.    This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment, which will grant final approval of this Agreement and among other things shall:

12.1.1.    Dismiss the Action with prejudice (as to only the Released Parties) and

without costs, except as contemplated by this Agreement;

12.1.2.   Decree that neither the Judgment nor this Agreement constitutes an admission by the Health Net Defendants of any liability or wrongdoing whatsoever;

12.1.3.   Bar and enjoin all Releasing Parties from asserting against any of the Released Parties any and all Released Claims;

12.1.4.   Release each Released Party from any and all Released Claims;

12.1.5.   Determine that this Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the members of the Settlement Class; and

12.1.6.   Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including the Health Net Defendants and all Participating Settlement Class Members, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment.

**13.    REPRESENTATIONS AND WARRANTIES**

13.1.   In addition to the representations and warranties set forth in Section 2 (The Recitals) of this Agreement, each signatory to this Agreement represents and warrants (i) that he, she, or it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein, (ii) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (iii) that this Agreement has been duly and validly executed and delivered by each signatory, and constitutes its legal, valid and binding obligation.

13.2.   The Health Net Defendants have provided to Plaintiffs the Settlement Class List containing the list of Persons to whom the Health Net Defendants provided notice of the FTA Data Breach, and represents and warrants such information is true and correct to the best of the Health Net Defendants' knowledge.

**14.    NO ADMISSION OF LIABILITY OR WRONGDOING**

14.1.   This Agreement, whether or not consummated, and any negotiations, proceedings

32

or agreements relating to this Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

14.1.1.    Shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms hereof;

14.1.2.    Shall not be described as, construed as, offered or received against the Released Parties as evidence of and/or deemed to be evidence of any presumption, concession, or admission by any Released Party of the truth of any fact alleged by Plaintiffs; the validity of any claim that has been or could have been asserted in the Action or in any litigation; the deficiency of any defense that has been or could have been asserted in the Action or in any litigation; or any liability, negligence, fault, or wrongdoing of any of the Released Parties; and

14.1.3.    Shall not be described as or construed against the Released Parties, Plaintiffs, or any Settlement Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been awarded to said Plaintiffs or the members of the Settlement Class after trial.

**15.    MISCELLANEOUS PROVISIONS**

15.1.    <u>Entire Agreement</u>. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. Each of the Parties to this Agreement acknowledges that no other Party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation, or warranty, express or implied, not contained in this Agreement to induce either party to execute this Agreement. Neither Party is relying on the other Party or their agents or attorneys and rather each Party decided to resolve the dispute in their own independent determination and judgment. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

15.2.    <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

15.3.    <u>Governing Law</u>. This Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

15.4.    <u>Execution by Counterparts</u>. This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent via email shall be treated as original signatures and shall be binding.

15.5.    <u>Notices</u>. Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to Health Net Defendants' or Defendants' Counsel, or if to Plaintiffs or the Settlement Class to Class Counsel, or to other recipients as the Court may specify. All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by mail and email to the following addresses:

| If to Plaintiffs or Class Counsel: | If to Health Net Defendants' or Defendants' Counsel: |
|---|---|
| Tina Wolfson<br>*twolfson@ahdootwolfson.com*<br>Robert Ahdoot<br>*rahdoot@ahdootwolfson.com*<br>Andrew Ferich<br>*aferich@ahdootwolfson.com*<br>**AHDOOT & WOLFSON, PC**<br>2600 West Olive Avenue<br>Suite 500<br>Burbank, California 91505<br><br>Laurence D. King<br>*lking@kaplanfox.com*<br>Matthew George<br>*mgeorge@kaplanfox.com*<br>**KAPLAN FOX & KILSHEIMER LLP**<br>1999 Harrison Street, Suite 1560<br>Oakland, CA 94612<br><br>Timothy G. Blood<br>*tblood@bholaw.com*<br>Paula R. Brown | Peter B. Morrison<br>*peter.morrison@skadden.com*<br>**SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM, LLP**<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, California 90071-3144<br><br>William E. Ridgway<br>*william.ridgway@skadden.com*<br>**SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM, LLP**<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, Illinois 60606 |

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

*pbrown@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA  92101

15.6.   <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of each of the Parties hereto.

15.7.   <u>Construction</u>. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

15.8.   <u>Severability</u>. The waiver or breach by one Party of any provision of this Agreement shall not be deemed a waiver or breach of any other provision of this Agreement.

15.9.   <u>Integration of Exhibits</u>. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement and are hereby incorporated and made a part of the Agreement.

15.10.   <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

15.11.   <u>Taxability</u>. The Health Net Defendants do not make and have not made any representations regarding the taxability of any Settlement Benefit, Fee Award, and/or any other payments made pursuant to this Agreement. Class Representatives and Class Counsel (on behalf of themselves and the Settlement Class Members) represent that that they have not relied upon any representation of any of the Health Net Defendants or their attorneys or the Settlement Administrator on the subject of taxability of any consideration provided under this Agreement. Class Representatives and Class Counsel (on behalf of themselves and the Settlement Class Members) understand and expressly agree that any income or other tax, including any interest, penalties or other payment obligations ultimately determined to be payable from or with respect to any Settlement Benefit, Fee Award, and/or any other payments made pursuant to this Agreement,

1
2
as well as any state or federal reporting obligations imposed on them arising therefrom or attributable thereto, shall not be the Health Net Defendants' responsibility.

3      15.12. Counterparts. The Settlement Agreement may be executed in one or more
4
5
counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

6      15.13. Deadlines. If any of the dates or deadlines specified herein falls on a weekend or
7
8
9
10
legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

11     15.14. Dollar Amounts. All dollar amounts are in United States dollars, unless otherwise
12
expressly stated.

13     **IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be
14
executed on its behalf by its duly authorized counsel of record, all as of the day set forth below:

15

16                                              AHDOOT & WOLFSON, PC
17   Dated:   December 3, 2021
                                                By: _____
18                                                  Tina Wolfson
19                                                  Robert Ahdoot
                                                    Andrew W. Ferich
20

21                                              BLOOD HURST & O'REARDON, LLP
22   Dated:   December 3, 2021
                                                By: _____
23                                                  Timothy G. Blood
                                                    Paula R. Brown
24                                                  Jennifer L. MacPherson

25

26

27

28

---

36

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

as well as any state or federal reporting obligations imposed on them arising therefrom or attributable thereto, shall not be the Health Net Defendants' responsibility.

15.12. <u>Counterparts</u>. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

15.13. <u>Deadlines</u>. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

15.14. <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below:

Dated:   December 3, 2021

AHDOOT & WOLFSON, PC

By: _____
    Tina Wolfson
    Robert Ahdoot
    Andrew W. Ferich

Dated:   December 3, 2021

BLOOD HURST & O'REARDON, LLP

By: _____
    Timothy G. Blood
    Paula R. Brown
    Jennifer L. MacPherson

36

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

1

2    Dated:   December 3, 2021

3

4

5

6

7    Dated:   December 3, 2021

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAPLAN FOX & KILSHEIMER LLP

By: _____
    Laurence D. King
    Matthew B. George
    Joel B. Strauss

SKADDEN, ARPS, SLATE, MEAGHER, &
FLOM LLP

By: _____
    Peter B. Morrison
    William E. Ridgway
    Zachary M. Faigen

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

1

2      Dated:   December 3, 2021

3

4

5

6

7      Dated:   December 3, 2021

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAPLAN FOX & KILSHEIMER LLP

By: _____
     Laurence D. King
     Matthew B. George
     Joel B. Strauss


SKADDEN, ARPS, SLATE, MEAGHER, &
FLOM LLP

By: _____
     Peter B. Morrison
     William E. Ridgway
     Zachary M. Faigen

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**