UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN HARBOUR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA HEALTH & WELLNESS PLAN, et al.,<br><br>Defendants. | Case No.  5:21-cv-03322-EJD<br><br>**ORDER GRANTING FINAL SETTLEMENT APPROVAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 58 |

Pending before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 58 ("Final Settlement Mot."), and Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. 57 ("Attorneys' Fees Mot."). On January 11, 2024, the Court heard oral arguments from the parties on both motions. ECF No. 59. There were no objections filed, and no objectors were present.

Having considered the motions briefing, terms of the Settlement, arguments of counsel, and other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representatives and class counsel are confirmed. The Court also **GRANTS** Class Counsel's requests for attorneys' fees and other costs.

I.  **BACKGROUND**

This is a data privacy litigation brought by Representative Plaintiffs John Harbour, Tami Wisnesky, Joweli Vunisa, and J. Doe (collectively "Plaintiffs" or "Class Representatives") against Defendants California Health & Wellness Plan, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., Health Net, LLC, and Centene

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
1

1   Corporation (collectively "Health Net Defendants"), and Accellion, Inc., ("Accellion") (all
2   collectively "Defendants") following Health Net's confirmation that it was impacted by the FTA
3   Data Breach. The Settlement Agreement seeks to dismiss the action only as to the Health Net
4   Defendants. Order Granting Prelim. Approval of Class Action Settlement 1, ECF No. 56.

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class and provisionally appointed Tina Wolfson, Robert Ahdoot, and Andrew Ferich of Ahdoot & Wolfson, PC, Laurence D. King, Matthew B. George, and Joel B. Strauss of Kaplan Fox & Kilsheimer LLP, and Timothy G. Blood, Paula R Brown, and Jennifer L MacPherson of Blood Hurst & O'Reardon, LLP (collectively "Class Counsel") as Class Counsel, Plaintiffs as Class Representatives, and Epiq Class Action and Claims Solutions, Inc., ("Epiq") as the Class Administrator. *Id.* at 2–3. The Court received no objections to the Settlement Agreement.

### A.   Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, Health Net will pay $10 million into a non-reversionary common settlement fund, without admitting liability. Class Action Settlement Agreement and Release ("Settlement Agreement") §§ 3.6.1, 3.7, ECF No. 53. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and the Class Representatives' service award. *See id.*

#### 1.   Attorneys' Fees and Costs

The Settlement Agreement provides that:

> Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves. The Health Net Defendants shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.
> The Settlement is not conditioned upon the Court's approval of the Fee Award and Costs or the Service Payments.

*Id.* §§ 11.2, 11.3. The Settlement Agreement allows Plaintiffs to seek up to $1,500 from the Settlement Fund to be paid to Class Representatives as an incentive award. *Id.* § 10.1.

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
2

United States District Court
Northern District of California

### 2.     Class Relief

Each participating Settlement Class Member may submit a claim to receive one of the following: (1) Credit Monitoring and Insurance Services ("CMIS") for three years, including Credit Monitoring, Fraud Consultation, and Identity Theft Restoration services, (2) cash fund payment, or (3) documented loss payment of up to $10,000. Settlement Agreement § 4.2. The cash fund payment will be calculated according to Settlement Agreement section 4.7. *Id.* § 4.2.2. California Settlement Class Members who submit valid claims for cash fund payments will receive payments that are twice the amount of payments made to non-California Class Settlement Members due to the heightened protections afforded to California Class Settlement Members under the California state statutory claims asserted in this lawsuit. *Id.* § 4.7.2; Final Approval Mot. 8. Based on the claims received as of December 21, 2023, Class Counsel believes that the cash fund payments will be approximately $243 for California claimants and $121 for all other claimants who make a claim for cash fund payments. Final Approval Mot. 8. The Settlement Agreement also provides injunctive relief, whereby Health Net agrees to implement and maintain specified data security measures for a period of five years. Settlement Agreement § 4.1.

### 3.     Cy Pres/Remainder

If settlement funds remain for more than 150 days after the distribution plan described above, a subsequent payment will be evenly made to all participating Settlement Class Members who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than $3.00. Settlement Agreement § 4.9. If the average check amount would be less than $3.00, the remaining funds will be used to extend the CMIS to participating Settlement Class Members receiving that benefit for as long as possible. *Id.* Any amount remaining in the settlement fund after extending the CMIS, if any, shall be distributed to the non-profit residual recipient, Electronic Frontier Foundation. *Id.* §§ 4.9, 1.26.

## B.     Class Notice and Claims Administration

The Settlement Agreement is being administered by Epiq. Final Approval Mot. 1. Following the Court's preliminary approval and conditional certification of settlement, Epiq

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES

3

implemented the Notice Plan. Declaration of Cameron R. Azari ("Azari Decl."), ECF No. 58-1. As of December 19, 2023, Epiq sent an email notice, including four rounds of reminder notices, or postcard notice to 1,387,210 of the 1,400,125 identified potential Settlement Class Members, which is approximately 90% of the Settlement Class. Azari Decl. ¶¶ 19–21. For postcard notices that were returned undeliverable, Epiq re-mailed them to any new address available through USPS information and to addresses Epiq obtains from a third party service. *Id.* ¶ 17. Epiq also carried out a digital notice campaign, including targeted digital notice advertising. As of December 18, 2023, the digital notices generated at least 8,209,458 impressions through the Google Display Network, Facebook, and Instagram. *Id.* ¶¶ 23–24. Epiq also created a dedicated settlement website ("the Settlement Website") at www.HNFTADataBreachSettlement.com, which included the long form notice in English and Spanish, the claim form, the Settlement Agreement, the Preliminary Approval Order, the operative Complaint, and the motions pending before the Court. *Id.* ¶ 25. The Settlement Website was listed in the emails, post cards, and digital notices. *Id.* ¶¶ 13, 15, 24. Settlement Class Members were also given the option to receive a long form notice and claim in the mail by requesting them via the toll-free telephone number or by other means. *Id.* ¶ 18. As of December 19, 2023, Epiq had mailed 2,940 claim forms and long form notices. *Id.*

As of December 19, 2023, Epiq has received 31,551 Claim Forms, which is nearly 2.3% of Settlement Class Members. *Id.* ¶ 31; Final Approval Mot. 19.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court must balance a number of factors to gauge fairness and adequacy, including the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
4

> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 1043 (internal quotation marks omitted).

### B.  Analysis

#### 1.  Class Certification

This analysis begins with an examination of whether class treatment remains appropriate under Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate protection by the Class Representatives.

Plaintiffs anticipated a Settlement Class comprised of approximately 1.4 million individuals who all share a common injury. Final Approval Mot. 9. The existence of this injury for each Settlement Class Member could be determined by resolving the same questions: "whether Health Net had reasonable data security measures in place to protect Plaintiffs' and Class Members' PII/PHI, and whether Health Net could have prevented unauthorized exposure or compromise of Plaintiffs' PII/PHI or mitigated its effects with more adequate third-party risk management practices." *Id.* at 10. Plaintiffs' claims were also typical, if not identical, to that of other Settlement Class members. *Id.* at 9–10. For that reason, there was no indication that Plaintiffs' interest would conflict with that of the Settlement Class. As to Rule 23(b), the Court finds that common questions predominate and that the class action mechanism was a superior process for this litigation. The alternatives to class certification—millions of separate, individual and time-consuming proceedings or a complete abandonment of claims by a majority of class members—were not preferable.

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
5

Therefore, the Court finds all factors have been met and the class shall remain certified for settlement purposes.

### 2. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Settlement Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds that the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Settlement Class Members of the Settlement Agreement and their rights to object or exclude themselves. Pursuant to those procedures, Epiq carried out the Notice Program and reached 90% of potential Settlement Class Members by using emails, postcards, and a digital campaign, as well as a toll-free number and a website. Azari Decl. ¶¶ 19–21.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. Settlement Is Fair and Reasonable

The Court finds that the Settlement here is fair, reasonable, and adequate under the *Churchill* factors. The Court will analyze each factor in turn.

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES

6

### a.  Strength of the Case

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). There is no "particular formula by which that outcome must be tested," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and the district court is not required to render specific findings on the strength of all claims. *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

Here, Plaintiffs assert that the alleged data breach violation underlying the claims is novel, and Plaintiffs faced potential issues establishing an injury or a CCPA violation, which requires that an unauthorized person viewed the breached data. Further, Health Net denies wrongdoing and argues that any potential violation has been cured—they had already sent noticed to impacted individuals, offered one year of credit monitoring and ID theft insurance, and hired third-party vendors to monitor dark web activity. Further, none of the impacted settlement class members' PII/PHI was published or offered for sale on the dark web.

This factor weighs strongly in favor of the settlement. Without a compromise, there was little guarantee of any benefit to the Settlement Class without a substantial amount of further litigation.

### b.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs state that counsel took a particularly high risk litigating this matter because the type of data breach injury asserted is legally unproven, technically complex, and potentially of little value. Moreover, Health Net's denial of liability means that Plaintiffs would continue to face "serious hurdles." *Rodriguez*, 563 F.3d at 966. Because a negotiated resolution provides for a certain recovery in the face of an uncertain legal theory, this factor favors the settlement. *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. 06-C-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### c.  Risk of Maintaining Class Action Status Throughout Trial

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
7

1   Although a class can be certified for settlement purposes, the notion that a district court
2   could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a
3   settlement. *See Rodriguez*, 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,
4   160 (1982)). Here, Health Net maintains no liability, thereby leading the Court to believe that
5   they would have opposed class certification before the district court. In addition, the sheer size of
6   the class all but invites challenges to class certification based on overbreadth or management
7   difficulties, some of which could be considered meritorious. Thus, the very real risk of never
8   obtaining or losing class status in the absence of settlement weighs in favor of approval.

### d. Amount Offered in the Settlement

Under the terms of the Settlement Agreement, Health Net will pay $10 million into a non-reversionary common settlement fund, without admitting liability. Class Action Settlement Agreement and Release ("Settlement Agreement") §§ 3.6.1, 3.7, ECF No. 53. This amount includes attorneys' fees and costs,ced cost of class notice and settlement administration, and the Class Representatives' service award. *See id.*

The Court finds that the amount of the agreed-upon settlement fund compares favorably to that of other similar class actions. *See, e.g.*, *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1114 (9th Cir. 2020) (inclusion of "enhanced disclosures and practices changes" in settlement agreement); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) ($13 million settlement for approximately 40 million class members); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) ($10 million dollar settlement for nearly 100 million class members); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen account passwords). Therefore, this factor favors settlement.

### e. Extent of Discovery

Prior to reaching the Settlement Agreement, the parties had not engaged in official discovery. Instead, the parties engaged in informal confirmatory discovery to confirm the

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
8

1    reasonableness of the settlement.  Therefore, because the parties conducted no formal discovery

2    prior to settlement discussions, this factor does not favor settlement.

### f.    Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Given the extensive experience of Class Counsel with complex class action lawsuits of a similar size to the instant case, this factor favors approval of the settlement.

### g.    Presence of a Governmental Participant

The Class Action Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment.  28 U.S.C. § 1715(b).  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *Garner*, 2010 WL 1687832, at *14.

No governmental agency is involved in this litigation. The Attorney General of the United States and Attorneys General of each State have been notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and had an opportunity to raise any concerns or objections.  Azari Decl. ¶ 8.  No objections have been made by the government to date.  Thus, this factor favors the settlement.

### h.    Reaction of Class Members to the Proposed Settlement

The reaction of the class was overwhelmingly positive.  The Court received no objections and only twenty-nine requests for exclusions.  Azari Decl. ¶¶ 29, 30; Notice of Filing of Updated Report, ECF No. 59.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
9

favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 Settlement Class members was proper). Therefore, this factor favors settlement.

In sum, nearly all the applicable factors weigh in favor of finally approving the Settlement Agreement. While the parties did not engage in formal discovery, the remaining factors overwhelmingly support the finding that the Settlement Agreement is fair and reasonable.

### 4. Collusion

The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court should be "particularly vigilant" when scrutinizing settlements achieved prior to class certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

Here, there is no evidence of conflicts of interest nor are there "subtle signs" of collusion. The Settlement Agreement was reached only after arm's-length negotiations between experienced counsel, including two in-person mediation sessions and additional negotiations facilitated by Judge Gandhi, a retired judge and experienced mediator. Judge Gandhi's involvement demonstrates, in part, non-collusive conduct. *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

Furthermore, Class Counsel did not reach an agreement with Health Net regarding the amount of attorney's fees to which they were entitled. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Rather, the attorneys' fees will be provided from the Settlement Fund, indicating that the parties have not negotiated a "clear sailing" arrangement,

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
10

1  which "carries the potential of enabling a defendant to pay class counsel excessive fees and costs
2  in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth*, 654
3  F.3d at 947.

### 5. Objections

There are no objections.

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorney's fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use the lodestar method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51).

Here, Class Counsel requests $2.5 million in attorneys' fees. Attorneys' Fees Mot. Health Net does not oppose the fee request. No objector has challenged Class Counsel's hours or rates.

### 1. Percentage of the Fund

When using the percentage of the fund method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
11

settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047–50). "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Under the percentage of the fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Here, Class Counsel ask for a fee award of $2.5 million, which is equal to 25% of the settlement fund. According to Class Counsel, the $10 million non-reversionary Settlement Fund and remedial measures is an excellent result that avoids the uncertainty and the risk of nonpayment presented by continued litigation. Class Counsel also believe that they undertook substantial risk by agreeing to litigate this case on a purely contingent basis given the "approximately 1.51[1] million Settlement Class Members, complicated and technical facts, well-funded defendants, and numerous contested issues on class certification and substantive defenses." Attorneys' Fees Mot. 13. In addition, they assert that "[t]his case presented extraordinary challenges that required extraordinary lawyering. In general, data breach class actions present relatively unchartered territory, and rarely reach class certification proceedings." *Id.* at 15.

Having considered the relevant factors, the Court agrees with Class Counsel that this action posed a substantial risk and required time and skill to obtain a result for the Settlement Class. The Settlement Agreement was reached only after two in-person mediation sessions and

---

[1] In their motion for final approval, Class Counsel inform the Court that the Settlement Class size is 1.4 million. Final Approval Mot. 1, 9, 11.

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
12

1    additional negotiations facilitated by Judge Gandhi, a retired judge and experienced mediator.

2    Moreover, based on the size of the breach and per capita figures, the Settlement Agreement

3    presents a robust relief package and valuable outcome for the Class that is comparable to or better

4    than other recent data breach class action settlements. *See, e.g., In re The Home Depot, Inc.*

5    *Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug.

6    23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class

7    members); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL

8    2178306, at *1–2 (D. Minn. May 17, 2017) ($10 million dollar settlement for nearly 100 million

9    class members); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement

10   fund of $1.25 million for claims related to approximately 6.4 million LinkedIn users' stolen

11   account passwords). Furthermore, Plaintiffs successfully obtained substantive and meaningful

12   injunctive relief as part of this Settlement. *See, e.g., Campbell v. Facebook, Inc.*, 951 F.3d 1106,

13   1114 (9th Cir. 2020) (inclusion of "enhanced disclosures and practices changes" in settlement

14   agreement).

### 2.    Lodestar

16   Under the lodestar approach, a court multiplies the number of hours reasonably expended

17   by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

18   calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

19   by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

20   the relevant community.'").

21   The Ninth Circuit encourages district courts "to guard against an unreasonable result" by

22   cross-checking attorneys' fees calculations against a second method. *In re Bluetooth*, 654 F.3d at

23   944. Since a 25% benchmark award might be reasonable in some cases but arbitrary in cases

24   involving an extremely large settlement fund, the purpose of the comparison is to ensure counsel

25   is not overcompensated. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust

26   Litig.*, 103 F.3d 602, 607 (9th Cir. 1997).

27   Here, Class Counsel calculate a lodestar figure of $1,413,855.50 for 1,794.8 hours from

three law firms, to which they apply a 1.77 multiplier for a total of $2.5 million. Attorneys' Fees Mot. 18. These amounts are attributable to each firm as follows:

| Firm | Fees | Expenses | Total Cost |
|---|---|---|---|
| Ahdoot & Wolfson, PC | $675,955.00 | $25,137.76 | $701,092.76 |
| Blood Hurst & O'Reardon, LLP | $284,232.00 | $3,588.99 | $287,820.99 |
| Kaplan Fox & Kilsheimer LLP | $453,668.50 | $8,606.31 | $462,274.81 |
| **Totals** | $1,413,855.50 | $37,333.06 | $1,451,188.56 |

Among the participating law firms, the hourly rates charged by attorneys range from $425 to $1,200.

Class Counsel has provided sufficient support for its proposed lodestar calculation. The number of hours and other costs attributed to this case are reasonable in light of the efforts required to engage in the settlement process here. In addition, the hourly rates charged fall within the range of those approved in other similar cases, and the lodestar multiplier of 1.77 is comparable to that previously permitted by other courts in similar data breach cases. *See, e.g.*, *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."). Accordingly, the lodestar cross-check confirms the reasonableness of the percentage-based calculation.

Based on the foregoing, the Court finds an award of attorneys' fees to Class Counsel in the amount of $2,500,000 fair, reasonable, and adequate.

### A.   Costs Award

Class Counsel also seek compensation for total costs of $37,333.06. Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs

1   compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the

2   parties' agreement." Fed. R. Civ. P. 23(h).  Here, Class Counsel seeks reimbursement for

3   litigation expenses, and provides records documenting those expenses, in the amount of

4   $37,333.06.  The Court finds this amount reasonable, fair, and adequate.

### B. Incentive Award

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *DVD-Rental*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).  The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the Class Representatives request service awards of $1,500 each.  Attorneys' Fees Mot. 21.  The Court finds that the requested service awards are reasonable considering Class Representatives' efforts in this case.  The requested service awards are also under the presumptively reasonable amount of $5,000 and are consistent with precedent.  *See, e.g., Allagas v. BP Solar Int'l*, 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to named plaintiffs who were deposed and $3,500 to one named plaintiff who was not deposed).

The Court therefore finds that the requested service awards are appropriate in this case.

### IV. CONCLUSION

Based on the preceding discussion, the Court finds that the terms of the Settlement,

Case No.:  5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
15

including the awards of attorneys' fees, costs, and incentive awards, is fair, adequate, and reasonable; that it satisfies Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors; and that it should be approved and implemented.

The Motion for Final Approval is **GRANTED**. Plaintiffs' Motion for Attorneys' Fees and Costs is **GRANTED**. Class Counsel is awarded $2,500,000 in attorneys' fees and $37,333.06 in litigation costs. Class Representatives are granted an incentive award of $1,500 each. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement Agreement.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **September 26, 2024**. The Court **SETS** a compliance deadline on **October 10, 2024,** on the Court's 9:00 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

Dated: January 16, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-03322-EJD
ORDER APPROVING FINAL SETTLEMENT; GRANTING MOT. FOR ATTORNEYS' FEES
16